**STATE of Tennessee, Appellee,**

v.

**Katherine Sheldon WRIGHT and Dennis Ray Brock, Appellants.**

Court of Criminal Appeals of Tennessee, Knoxville.

Feb. 5, 1981.

Permission to Appeal Denied by Supreme Court June 1, 1981.

Joe H. Walker, Harriman, for appellant Wright.

Frank H. Williams, III, Dennis E. Blevins, Kingston, for appellant Brock.

William M. Leech, Jr., Atty. Gen., John F. Southworth, Jr., Asst. Atty. Gen., Nashville, H. Kenneth Deatherage, Dist. Atty. Gen., Kingston, Edward Bailey, Asst. Dist. Atty. Gen., Lenoir City, Charles Hawk, Asst. Dist. Atty. Gen., Kingston, D. Roger Delp, Asst. Dist. Atty. Gen., Loudon, for appellee.

## OPINION

DUNCAN, Judge.

The defendants, Dennis Ray Brock and Katherine Sheldon Wright, were convicted in the Roane County Criminal Court of murder in the first degree. Each defendant received a life sentence in the penitentiary.

In this appeal, the defendants request our review of numerous issues. We find merit to their complaint that the trial judge committed reversible error in refusing to charge the jury on the lesser included offenses of murder in the first degree.

The evidence in this case showed that defendant Wright was the wife of the de-

ceased, Jerry Wayne Wright, but they were separated. She was living with defendant Brock in a trailer at the time of this homicide.

In the early morning hours of January 3, 1979, the body of the deceased was found in a truck parked off the side of a gravel road in Roane County. The deceased died of multiple wounds to his head. After the police found the deceased, they searched the defendants' trailer and found various items with bloodstains on them. The blood type of the blood on these items was the same type as the deceased's. Officer also found an undated note from Wright to Brock which included, among other things, the phrase, "But I tell you what (sic) I'm going to get rid of Jerry no matters (sic) what it takes. I'll do it."

The homicide occurred on the evening of December 31, 1978. According to Gene Denton, a key witness for the State, the defendants and he were riding around on the day following the homicide, and as they passed the spot where the truck was parked, Wright said, "It's still there." Denton also said that on that same day he observed a bloodstained cap and other bloodstained items at the defendants' trailer, and that Brock said, "We killed Jerry Wright." Brock then inquired whether Denton "could do what they did."

Further, Brock's sister, Sara Ann Brock, testified that on the day of the murder, Wright told her that she was going to get rid of the deceased that evening. The witness said that the next day Wright told her that the deceased was killed at 10:10 p. m. rather than 8:00 p. m., the time he was supposed to have been killed. The witness also said that Wright told her that the deceased had been killed with "either an axe or something like that," and that she had been struck on the hand by a blow intended for the deceased.

Further, the evidence showed that during the spring of 1979, Wright and a third party drove to a "roadside dump area" in Morgan County where Wright insisted that certain debris be photographed so that she could have pictures for "old times sake." She also told the third party that this was the place where "they" were supposed to have thrown "the hatchet out." A hatchet, introduced as an exhibit and described as capable of producing the type of wounds sustained by the deceased, was later found at this location. This hatchet had been borrowed by Brock from a neighbor three weeks before the homicide. Numerous bloodstained articles from the defendants' trailer were also later found at this "dump area."

According to Gene Denton, Brock came to his house on the morning of January 1, 1979, and gave him a watch that belonged to the deceased. Denton later gave the watch to the police. Brock also had the deceased's shotgun, which he offered to sell to Denton, but Denton was unable to purchase the gun because he did not have enough money. However, Denton offered to sell the gun for Brock. Denton and Brock went to L.B. Presley's residence and offered to sell Presley the gun. Presley bought the gun for forty-five dollars ($45.00), and said he understood that Denton was to get five dollars ($5.00) out of the transaction. Also after the homicide, some incriminating bloody clothes and a tire from the deceased's truck were found in the trunk of a Maverick automobile owned by Glenn Sheldon. Denton had owned this Maverick on the date of the homicide, but on January 3rd he traded it to Brock in exchange for Brock's Lincoln automobile. Denton claimed that Brock had transferred some items from this Lincoln into the trunk of the Maverick. Later the same day, Brock traded the Maverick to Sheldon.

When the defendants were arrested at the Scottish Inn in Harriman on the morning of January 3, 1979, officers found bloody clothes in the motel room. Both defendants initially denied knowing anything about the killing of the deceased. However, both defendants testified at the trial and admitted that they were present at the time of the homicide, but insisted that Gene Denton had killed the deceased. They said that on December 31, they picked Denton up as they were going to their

trailer, and that Denton took some pills. After they arrived at the trailer, the deceased came in and a friendly visit took place between all of them. Suddenly, and for no apparent reason, Denton assaulted the deceased. Brock testified that Denton commenced hitting the deceased with a hatchet. Both defendants testified that Wright covered the deceased's with her hands in an attempt to protect him, and that she was struck on one hand by one of the blows intended for the deceased.

Wright said that as she was trying to protect the deceased, Denton threatened to kill her and her baby. She then grabbed the child and ran into a bedroom. She could not remember any of the events that occurred thereafter.

Defendant Brock testified that Denton hit the deceased with a hatchet and threatened to kill all of them. He said that he then went into the bathroom, but Denton called him back into the living room. Brock said that when he returned to the living room he did not see the deceased's body, but Denton told him that if he didn't follow him (Denton) he would kill him, as well as "Kathy and the baby." Denton drove the truck to "Little Emory Lake" and Brock followed him in a car. After Denton parked the truck, he and Brock returned to the trailer. Brock explained that his actions immediately after the killing, and his association with Denton on the succeeding two days were because of threats which Denton had made.

Thus, it is the defendants' position that although they were present at the scene, they did not kill the deceased and did not know that he was going to be killed.

Brock testified that he had had some "little arguments" with the deceased in the past, but that "we always worked it out." He said that they were "friends," that the deceased traded at a service station where he worked and which was owned by Brock's father, and that he had no complaints at all about the deceased. In general, Brock sought to show that he and the deceased maintained an amiable relationship and that he harbored no ill will or malice against the deceased.

Likewise, Wright sought to show that in spite of their estrangement, she and the deceased were on friendly terms. She testified that even though they had separated, she had returned to him from time to time, had spent the night with him, and had cooked his meals. She said that she and the deceased had been planning to reconcile and move to Kentucky. She said that Brock and the deceased "got along real good." Additionally, Wright testified that she had tried to protect the deceased from Denton's assaults and that her hand had been injured in the process.

As part of her defense, the defendant Wright offered a defense of insanity. Although the jury rejected this defense, we note that the jury was entitled to consider her mental state in determining whether the State had proved the elements of first degree murder, particularly the element of premeditation, or whether she was guilty of some lesser offense. In this respect, we point out that medical authorities described her as having a "hysterical personality," and variously described the defendant as being "passive," "not aggressive," "immature," and "very dependent."

■ Under all of the evidence as summarized herein, it was the jury's duty to determine whether the defendants were guilty of murder in the first degree or of the lesser included offenses. However, the record shows that the trial court only charged the law on the offense of murder in the first degree.[1] We agree with the defendants

---

1. We note that in murder in the first degree prosecutions prior to 1977, T.C.A. § 39–2404 (1975) required the jury to ascertain in their verdict whether the accused was guilty of murder in the first or second degree. In 1977, the legislature amended this section and set up the bifurcated trial procedure to be followed in a case where one was found guilty of murder in the first degree. T.C.A. § 39–2404 (Supp.1980). The amendment deleted the language of the old section. In the present case, since we find the evidence warranted a charge on the lesser grades of murder in the first degree, we need not comment on the significance, if any, of the failure to carry the language of the former section (T.C.A. § 39–2404 (1975)) over into the

that the trial court's failure to charge on the lesser included offenses has created reversible error.

The following instructions were included in the trial court's charge to the jury:

The indictment in this case charges the defendants with the crime of first degree murder. The indictment the Attorney General has read to you and which indictment the defendants say that they are not guilty.

. . . .

The law applicable to this case is stated in these instructions and it is your duty to carefully consider all of them.

. . . .

If you find from the proof beyond a reasonable doubt that the defendants or any one of them guilty of murder in the first degree you will so report and your verdict in that event shall be:—

"We, the Jury, find the defendant guilty of murder in the first degree."

If you so find then it shall be your duty after a separate sentence hearing to determine whether the defendant shall be sentenced to death or life imprisonment. But you will not consider punishment for this offense at this time.

If you find the defendant not guilty of murder in the first degree or if you have a reasonable doubt as to his or her guilt of this offense, then in that event you must acquit him or her of this offense.

. . . .

You must weigh the entire proof as to each defendant, and if after consideration of all of the proof you are convinced beyond a reasonable doubt they and each of them are guilty you should find them guilty and fix their punishment as the court will hereinafter charge you.

If upon the other hand you have a reasonable doubt as to the guilt of either or both or any then you should acquit the defendant or defendants about whom you have a reasonable doubt. As to each of the defendants you may convict one and acquit the other, or acquit any or all of them, or find any or all of them guilty if you believe beyond a reasonable doubt that any or all of them are guilty.

. . . .

If you find that the State has proven the defendants guilty beyond a reasonable doubt then you should find him or her, or both guilty.

On the other hand if you find that the State has not proven beyond a reasonable doubt the defendants, or either of them guilty, or if you have a reasonable doubt as to the (sic) his or her guilt then you must find the defendants or either of them guilty, whom you have determined to be not guilty.

The defendants objected to the trial court's failure to charge on the lesser included offenses and filed special requests for instructions on murder in the second degree and voluntary manslaughter.

The trial court responded to the defendants' objection and requests by commenting:

Should this resolve in a finding of not guilty then we would immediately come back into the Court room and I will charge on lesser included offenses. But I am going to deny that in this charge.

. . . .

Should the appropriate form be returned I will charge voluntary manslaughter and I will charge murder in the second degree, . . . .

Thus, the record clearly shows that it was the trial court's intention to charge on the lesser included offenses only if the jury returned a verdict of "not guilty" on the offense of murder in the first degree. The jury did not return a verdict of "not guilty"; instead the jury found the defend-

---

new law (T.C.A. § 39–2404, (Supp.1980)), nor need we comment on such cases as *Edwards v. State*, 221 Tenn. 60, 424 S.W.2d 783 (1968), *Nicholas v. State*, 211 Tenn. 264, 364 S.W.2d 895 (1963), *Thomas v. State*, 210 Tenn. 297, 358 S.W.2d 315 (1962), *Jones v. State*, 128 Tenn.

493, 161 S.W. 1016 (1913), which cases were decided under the former Code section and which held that the jury was mandatorily required to fix the degree of the homicide in their verdict.

ants guilty of murder in the first degree, and the trial court moved immediately to the sentencing phase of the trial.

T.C.A. § 40–2518(a) (Supp.1980), provides: It shall be the duty of all judges charging juries in cases of criminal prosecutions for any felony wherein two or more grades or classes of offense may be included in the indictment, to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so.

■ The law in Tennessee is clear that where there are any facts that are susceptible of inferring guilt of any lesser included offense or offenses, then there is a mandatory duty upon the trial judge to charge on such offense or offenses. *State v. Staggs*, 554 S.W.2d 620 (Tenn.1977); *Strader v. State*, 210 Tenn. 669, 362 S.W.2d 224 (1962); *Templeton v. State*, 146 Tenn. 272, 240 S.W. 789 (1922); *Poole v. State*, 61 Tenn. (2 Baxt.) 288 (1872). Failure to do so denies a defendant his constitutional right of trial by a jury. *State v. Staggs, supra; Strader v. State, supra.*

In *Poole v. State, supra,* we find the following language:

It is also the duty of the Court to define in his charge all the offenses embraced in an indictment for this crime. The jury is the exclusive judge of the facts, the Court is a witness to it of the law. When the jury has heard the facts, it is for it to say what offense, if any, has been committed against the law. However plain it may be to the mind of the Court that one certain offense has been committed and none other, he must not confine himself in his charge to that offense. When he does so he invades the province of the jury, whose peculiar duty it is to ascertain the grade of offense. However clear it may be, the Court should never decide the facts, but must leave them unembarrassed to the jury.

The rule that a Court is only required to charge as to such questions as are made by the facts, means simply that if legal questions present themselves by the facts, and which are claimed either to sustain or refute the charges in the indictment, then it is the duty of the Court to charge upon such questions but if questions not so raised are urged, it is not the duty of the Court to charge touching them. It was never meant that the Court should be excused from defining the offenses averred or embraced in the indictment. 61 Tenn. at 294–95.

In commenting on the obligation of a trial judge to charge on lesser included offenses, our Supreme Court in *Strader v. State, supra,* after quoting the language of T.C.A. § 40–2518, said:

Thus, the command of this statute is without qualification or exception. It includes all cases of felonies with lesser included offenses, and requires the judge to charge the jury as to all the law of each of such offenses in all such cases. But we have held that such charge need not be given where there is *"no evidence"* of such offense, and the charge would be a mere abstraction "upon hypothetical questions not suggested by proof." *Good v. State*, 69 Tenn. 293, 294–296; *Baker v. State*, 203 Tenn. 574, 577, 315 S.W.2d 5.

. . . .

In *Frazier v. State*, 117 Tenn. 430, 441, 100 S.W. 94, it is said that the Trial Judge's omission to charge the jury the law as to such lesser included offenses is reversible error, unless there is no evidence as to such offenses and unless it is absolutely certain that defendant could not be prejudiced by such omission. The rule there stated by Judge Shields for the Court, has been often quoted with approval. He said:

"The better practice to be pursued by trial judges undoubtedly is for them to charge upon all offenses embraced in the indictment, because, whenever there is any doubt that the defendant has been prejudiced by such omission, it will be error, for which it will be the *duty of this court to reverse the judgment and remand the case for a new trial.*

It is only in cases where it is absolutely certain that the omission was not prejudicial to the defendant, in the trial court, that a charge omitting instructions upon every offense contained in the indictment can be sustained." (117 Tenn. 441, 100 S.W. 97). 210 Tenn. at 679, 682–83, 364 S.W.2d 895.

In *Templeton v. State, supra,* we find this apt comment:

Under our system the jury is the judge not only of the facts but of the law as well, the court being only a witness as to the law, and it is his duty to tell the jury what the law is, applicable to any phase whatever of offenses charged against a defendant. He cannot be excused from doing so upon the ground merely that the defendant insists he is not guilty of anything and the State that he is guilty of a higher offense. If the facts are at all susceptible of the inference of guilt of the lesser grades of the offense, the jury must be given the law with respect thereto. 146 Tenn. at 280, 240 S.W. 789.

In *Good v. State, supra,* the court set forth the factors that must be present to warrant a trial judge to forego a charge on lesser included offenses. After referring to the statute [now 40–2518(a) (Supp.1980)] requiring a charge on the grades or classes of offenses included in an indictment, the court said:

This is a wise statute made for the protection of the accused in all cases in which the facts may demand its application. Its purpose is to secure the defendant the benefit of all the law applicable to the facts of his case, without any request on his part. It was not intended, however, to call from the court a charge upon hypothetical questions not suggested by proof.

When it is clear that the grade of offense charged is proved, and there is no room for doubt as between it and a lesser grade embraced by statute in the higher, and of course included in the indictment, to charge the law pertaining to such lesser grades would simply tend to confuse and mislead the jury, and often result in verdicts inadequate to the crime actually committed. In applying the rule of this opinion courts will of necessity act with circumspect caution, giving to the accused the full benefit of all the rules of law applicable to the facts developed in the trial of his cause.

When the offense charged is beyond controversy made out and is complete, it is the duty of the court to confine its charge to such case; and so, if the offense must be the one charged or no offense in law, as frequently happens, the charge should be so restricted that the jury may be enabled to decide intelligently the single question presented and not be mystified by abstractions. 69 Tenn. at 294–95.[2]

The State, referring to the rule of *Good v. State, supra,* which rule we have quoted above, and also citing *Whitwell v. State,* 520 S.W.2d 338 (Tenn. 1975), acknowledges that trial courts have a duty to charge on lesser included offenses, but argues that such duty does not extend to those offenses unsupported by any view of the evidence. The State insists that the proof in the present case shows the defendants' guilt of murder in the first degree, exclusive of any lesser included offenses, and therefore the ultimate outcome of the novel procedure followed by the trial court was proper.

While the evidence in this case is very strong to show the defendants' guilt of

**2.** In *Jones v. State, supra,* the court found reversible error where the trial judge charged only on the offense of murder in the first degree. The court said that in every murder case where the crime of murder in the first degree is involved or embraced in the indictment, the trial judge must charge on both murder in the first degree and murder in the second degree, but that as to the lower grades of homicide, the rule announced in *Good v. State, supra,* was to be applied. Further, the court said that the

trial judge's failure to charge on the lesser included offenses "was equivalent to a specific instruction that plaintiff-in-error was guilty of murder in the first degree, or entitled to an acquittal under his plea of self-defense." 128 Tenn. at 495, 161 S.W. 1016. We note that the *Jones* case was decided when T.C.A. § 39–2404 (1975) required the jury to ascertain in their verdict whether the accused was guilty of a murder in the first or second degree. *See* n.1, *supra.*

murder in the first degree, we cannot say, in view of the facts as we have previously set forth, that there was no evidence to warrant the jury in finding one or both of the defendants guilty of some lesser grade of the homicide had the jury been given an opportunity to do so. Further, we hasten to add that the trial judge himself also recognized that there was sufficient proof to warrant a charge on the lesser included offenses of murder in the second degree and voluntary manslaughter. His error was in holding such a charge in abeyance, contingent upon a "not guilty" verdict of murder in the first degree.

Additionally, we point out that under the charge as given, the jury was necessarily left with the definite impression that if they returned a verdict finding the defendants "not guilty" of murder in the first degree, then the case would be at an end and the defendants would be absolved of any responsibility for this homicide. Under the facts of this case, such impressions would very likely trigger a guilty verdict of murder in the first degree, even though the jury might well have settled on some lesser degree of homicide had they been given an opportunity to consider the other grades of the offense.

The trial court correctly followed the pattern jury instruction in charging on the offense of murder in the first degree. T.P.I. Crim.—20.01. The jury was properly advised that if they found the defendants guilty of this offense, the punishment, either death or life imprisonment, would be fixed at a separate sentencing hearing. The error in this case is that the trial court did not then include in its main charge the law on the lesser included offenses, including the punishments applicable to such lesser included offenses. Thus, by reason of the incorrect procedure followed by the trial court, the jury was never aware that there were any lesser included offenses involved and were never given the opportunity to consider them. Rather, the jury was left only with the option of either convicting the defendants of murder in the first degree or freeing them from any responsibility for this homicide.

Unquestionably, reversible error is present because of the trial judge's failure to charge on the lesser included offenses of murder in the first degree.

■ Next, we find no merit to the defendants' complaint that they were illegally arrested. Acting on information that the defendants had killed the deceased and that they had left his body in a truck, the police found the body on January 3, 1980, at 12:30 a. m. They immediately went to the defendants' trailer but the defendants were not there. Subsequently, the police went to the Scottish Inn Motel where they arrested the defendants at approximately 6:15 a. m. The police had probable cause to arrest the defendants. T.C.A. § 40–803(3); *Simmons v. State*, 198 Tenn. 587, 281 S.W.2d 487 (1955); *Jones v. State*, 161 Tenn. 370, 33 S.W.2d 59 (1930). The exigencies of the situation demanded that the police proceed as they did. The case of *Payton v. United States*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), cited by the defendants in their brief, is inapplicable to the factual situation in the present case. Also, we note that in the lower court, the defendants did not raise a complaint about their arrest.

■ Further, we find that the search of the defendants' trailer was valid. After the police discovered the deceased's body at 12:30 a. m. on January 3, they went to the defendants' trailer between 3:00 a. m. and 4:00 a. m. searching for them. The lights in the trailer did not work, and the police used flashlights in their search for the defendants. The police left when they were unable to locate the defendants at the trailer. The police did not take anything from the trailer on that visit. The exigencies of the situation authorized the police to enter the defendants' trailer on this occasion. Moreover, nothing occurred on this visit that served to taint a subsequent search that was conducted pursuant to a search warrant.

■ The search that was conducted pursuant to the search warrant was carried out around 6:00 p. m. on January 3, 1979, after

the defendants had been arrested. We find no merit to the defendants' complaint that this search warrant was invalid. The police obtained the search warrant based upon information that Gene Denton had furnished, along with other information they had gleaned from their investigation. There was some discrepancy in the description of the roads and distances listed in the search warrant; however, we point out that such inaccuracies will not invalidate a search warrant if the description contained in the warrant will enable an officer to locate the premises searched with reasonable certainty and points to a definitely ascertainable place so as to exclude all others. *Feagins v. State*, 596 S.W.2d 108 (Tenn. Crim. App. 1979). The search warrant contained a minute description of the trailer, including a listing of the trailer's serial number. We find that the overall description contained in this search warrant was such as to enable the police to locate the place to be searched with reasonable certainty. With the description contained in this search warrant, the likelihood that the police would have searched the wrong trailer is nonexistent. *Squires v. State*, 525 S.W.2d 686 (Tenn. Crim. App. 1975). The trial court properly overruled the defendants' motion to suppress the evidence obtained in this search.

Another issue is whether the trial court improperly allowed into evidence items seized which were not listed on the search warrant.

In the present case, the search warrant authorized the officers to search for bloodstains, a baseball cap and a hammer. Many of the items seized had bloodstains. Further, two hammers and a baseball cap were seized.

■ There is no prohibition against the seizure of other property not specifically mentioned in a valid search warrant, if such is relevant to the crimes suggested by the warrant. *Vermilye v. State*, 584 S.W.2d 226 (Tenn. Crim. App. 1979); *Armstrong v. State*, 548 S.W.2d 334 (Tenn. Crim. App. 1976); *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). An officer who is conducting a search pursuant to a valid search warrant and who discovers other property being used in the commission of a crime may seize same, provided the added seizure is reasonable. *Robertson v. State*, 188 Tenn. 471, 221 S.W.2d 520 (1949); *Jones v. State*, 523 S.W.2d 942 (Tenn. Crim. App. 1975).

Before we leave this particular complaint, we note that some of the numerous exhibits filed in evidence had no relevance or probative value to the case at hand. Although we find under the present record that the admission of these immaterial exhibits did not prejudice the defendants, we nevertheless suggest that on retrial, the trial court should carefully scrutinize all of the exhibits and only allow the admission of those that are deemed to be relevant within the guidelines of the cases we have cited above.

■ The defendant Wright's complaint that the trial court wrongfully disallowed the inspection of prior statements of Gene Denton is not meritorious. The record does not show that the defendant Wright made a request at the trial to inspect such alleged statements. The defendant Brock did make such a request but only after Denton had completed his testimony and after another witness had testified. The trial court denied Brock's request because of its untimeliness. In *State v. Wilson*, 611 S.W.2d 843 (Tenn. Crim. App. 1980), a panel of this Court dealt with this exact problem. Judge Daughtrey, writing for the Court, said:

Rule 16(a)(1)(E) provides that "[a]fter a witness . . . has testified on direct examination, the court shall, on motion, order the state . . . to produce any statement of the witness in the state's . . . possession which relates to the subject matter as to which the witness has testified." This court has previously held that the failure to make a timely motion works a waiver under Rule 16(a)(1)(E). *Larry Clay Smith v. State of Tennessee*, Court of Criminal Appeals at Knoxville, unreported, April 5, 1979. We conclude that this interpretation of the rule should be extended to the situation before us. The purpose of Rule 16(a)(1)(E), unlike other

provisions of Rule 16, is not to permit pretrial discovery but to provide a basis for possible impeachment of a witness's testimony at trial. That purpose is defeated if the motion to inspect the witness's pretrial statement follows rather than precedes the witness's testimony.

■ Further, we find no error in the admission of the various photographs into evidence. Many were merely photographs of the various exhibits; others were of the deceased's body. Those photographs of his head which showed the multiple wounds were relevant on the question of deliberation and premeditation. We find that the trial judge properly exercised his discretion in allowing the photographs into evidence. *State v. Banks*, 564 S.W.2d 947 (Tenn. 1978).

Additionally, we find that the trial court's rulings and instructions to the jury regarding the medical records introduced into evidence by the defendant Wright were correct. *See Graham v. State*, 547 S.W.2d 531 (Tenn. 1977).

Likewise, we find that the trial court's instructions to the jury concerning malice were correct. *See Armes v. State*, 540 S.W.2d 279 (Tenn. Crim. App. 1976).

■ Finally, the defendants correctly contend that the trial court erred in allowing the jury to view certain selective exhibits during their deliberation. A jury is not permitted to take exhibits to the jury room, absent consent from the parties. *Watkins v. State*, 216 Tenn. 545, 393 S.W.2d 141 (1965). Defendant Wright properly objected when the jury requested to view these exhibits and assigned this complaint in her motion for a new trial. Thus, as to her, the complaint is meritorious. The defendant Brock's complaint in this regard is less tenable because he did not object at the time nor list this complaint in his motion for a new trial. At any rate, in the context of the facts and circumstances of this case, we find that no prejudice resulted to either of the defendants. The error is harmless. *Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b).* However, on retrial, the trial court

should be guided by the *Watkins* rule regarding this matter.

We must reverse the defendants' convictions because of the trial court's failure to charge on the lesser included offenses of murder in the first degree. This case is remanded to the trial court for a new trial.

DWYER and CORNELIUS, JJ., concur.

CORNELIUS, Judge, concurring.

I concur with much hesitation in the following statement in the majority opinion:

"Under all of the evidence as summarized herein, it was the jury's duty to determine whether the defendants were guilty of murder in the first degree or of one of the lesser included offenses. However, the record shows that the trial court only charged the law of the offense of murder in the first degree. We agree with the defendants that the trial court's failure to charge on the lesser included offenses has created reversible error."

Bifurcated trial procedure in capital cases are relatively new in State criminal prosecutions.[1] It came into conception in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346. It became a legitimate entity in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859.

In *Furman*, the court was concerned with statutes which left the jury with untrammeled discretion to impose or withhold the death penalty. The individual opinions of *Furman*, in summary, were concerned with the disproportionate number of death sentences imposed between classes of people. *Furman* also took cognizance of the irrational application of the death penalty to the heinous nature of the crime.

In *Gregg*, supra, 92 S.Ct. at page 2922, and *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 2957, 49 L.Ed.2d 929; and *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 2967, 49 L.Ed.2d 913, the (six) Justices rejected the petitioners' assertions that arbitrariness still pervaded in the *entire* criminal justice system of Georgia, Texas and Florida. This

1. Habitual criminal procedure slowly conceived the bifurcated trial.

assertion included the prosecutor's decision whether to charge a capital offense in the first place and then whether to engage in plea bargaining, the jury's consideration of lesser included offenses, and the Governor's ultimate power to commute death sentences.

In our present case we have only the issue of when should the jury consider the lesser included offenses. In a bifurcated trial with the first stage being concerned with guilt or innocence, is it not logical that question be addressed directly to the capital offense? Bifurcated means to divide into two parts. If the jury finds the defendant guilty in the first stage, they fix the punishment in the second. On the other hand, assume they find the defendant not guilty of the capital offense, there is still the second stage in which to consider the lesser included offenses. I take issue with those who would say that if the jury found the defendant not guilty in the first stage, further proceedings would be prevented on the question of guilt or innocence of lesser included offenses. Every juror that found guilt in a lesser included offense had by the nature of the proceedings acquitted the defendant of the greater offense.

It may well be that we are circling back to the unusual punishment which *Furman* found violated the Eighth Amendment of the United States Constitution. The State has raised a strong argument in the fact that the twenty-two marks left by the hatchet upon the body of the deceased show conclusively that his assailant committed the crime of murder in the first degree. Would not a conviction of a lesser included offense be irrational relative to the heinous nature of the crime?

Since I am required to follow the law, I concur in this opinion with reservations.