IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

APRIL 1998 SESSION

FILED

September 10, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 01C01-9707-CR-00236 |
| Appellee, | * | DAVIDSON COUNTY |
| VS. | * | Hon. Thomas H. Shriver, Judge |
| WILLIAM JETT, JR., | * | (Stalking) |
| Appellant. | * | |

For Appellant:

Terry J. Canady, Attorney
211 Printers Alley Building
Suite 400
Nashville, TN 37201-1414

For Appellee:

John Knox Walkup
Attorney General and Reporter

Marvin E. Clements, Jr.
Assistant Attorney General
Criminal Justice Division
Cordell Hull Building, Second Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

S. Carran Daughtrey
and
Kymberly Haas
Assistant District Attorneys General
222 Second Avenue North
Suite 500
Nashville, TN 37201

OPINION FILED:_____

AFFIRMED

GARY R. WADE, JUDGE

<u>OPINION</u>

The defendant, William Jett, Jr., was convicted of Class C felony stalking. The trial court imposed a Range II, seven-year sentence which is to be served consecutively to a prior sentence he is serving as the result of a probation violation. In this appeal of right, the defendant challenges the sufficiency of the evidence, complains that the trial court erred by refusing to instruct the jury on the crime of harassment and argues that the jury was improperly informed of his prior conviction for stalking. We find no error and affirm the judgment of the trial court.

The defendant and the victim, Jamie Carter, initiated a relationship in March of 1994 and began to live together at the victim's residence in March 1995. On July 22, 1995, the defendant had an argument with the eleven-year-old daughter of the victim. In consequence, the victim then directed the defendant to leave and asked him not to call, write, or otherwise communicate with her. The defendant left but remarked that "it wasn't over yet...."

On August 30, 1995, the victim received three telephone calls. She did not answer and no message was left on the voice mail system. On the following day, there was another call. Again, no message was left. Shortly thereafter, the defendant left a recorded message for the victim, acknowledging that he should not have called. He expressed his love for her and asked her "not to get him in trouble for calling." The victim continued to receive calls later that evening; three messages were left from a Nashville pay phone by a disguised voice. In these recordings, the caller left word that he was "coming for her," out to "get her," and going to "blow her up."

It was the victim's opinion that the defendant had left the messages.

2

Her conclusion was based upon the caller's utilization of phrases commonly used by the defendant and his obvious knowledge of information personal to the victim. The recordings included threats to rape, kill, and "rip the insides out" of the victim. The caller stated that he enjoyed watching the victim and would enjoy hurting her. The victim estimated at twelve the number of hang-up telephone calls she received during the course of that particular day. There were other calls involving either hangups or messages by a disguised voice. The calls continued through September 8. In a call from a pay phone, a disguised voice left the following message:

> Listen to what I say. You and Bill better get back together or people will get hurt. Work it out or pay the price.

The victim had not received any threatening or harassing calls before August 30 and did not receive any after September 8. During this period, the victim changed her telephone number four times; on the last change, she told no one of her new number, including her daughter. When the calls persisted, the victim and her daughter moved to the residence of a friend, Mickey Walker, for a period of six to eight weeks in September and October.

During this time, the victim was employed by the Baptist Hospital in Nashville. Timothy Harrington, a security officer at the hospital, had been briefed about a possible situation involving the victim on September 8. He observed the defendant at the victim's place of work the next day, only a short time after a telephone call had been received by a hospital receptionist. The telephone equipment indicated that the call had been made from inside the hospital. The caller asked for the victim. After learning of the call, Harrington saw the defendant, who had parked his car on a public street, walk three of the levels inside the hospital

3

employee parking garage. The garage required an access card. When confronted by Harrington, the defendant claimed that he was there to see an orthopedist about his knee. The orthopedic group he referred to no longer had an office near the garage. After this incident, the victim swore out a warrant against the defendant for stalking.

At trial, Mickey Walker testified that when she learned of the threatening calls, she gave permission to the victim and her daughter to stay with her and her husband at night. Ms. Walker recalled that the defendant made several calls to her residence, professing love for the victim and expressing his desire to get her back. She remembered that the defendant left word for the victim to page or telephone either him or his mother. She estimated that the defendant called between two and three times a day from August 31 to September 8. Ms. Walker testified that the defendant became angry when the victim was not there and demanded to know her whereabouts. She informed the defendant, who had threatened to destroy the victim's flowers, that the victim was staying with her at night. Ms. Walker testified that the defendant continued to call her residence even though he had been asked not to do so.

Bobby Comfort testified that on September 1, he had seen the defendant walking out of a video store in the Fairview area where the victim resided. A clerk in the store, Amy White, testified that on that date, a male had rented some items and charged them to the victim's account. The time of the transaction was 8:56 P.M.

Joyce LaTrina Johnson, a receptionist and clerical worker at the food court at Baptist Hospital, answered several telephone calls during that period. She

4

was familiar with a male voice who had made previous calls to the victim at the hospital. When she received a call on September 8, Ms. Johnson contacted security and the defendant was eventually arrested. On cross-examination, Ms. Johnson admitted that she did not know whether the defendant was the person who had made the telephone calls. She did say, however, that only one male voice had ever telephoned the victim at the hospital. Ms. Johnson explained that she chose not to inform the victim of the September 8 call because "we didn't want to alarm her."

The defendant did not testify. He did not offer any witnesses in his defense.

I

Initially, the defendant contends that no rational trier of fact could have found the essential elements of stalking beyond a reasonable doubt. He maintains that the victim never knew the defendant was following her.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). A conviction may only be set aside when the reviewing court finds that the "evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13 (e). A jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the theory of the prosecution. State v.

5

Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978).

The statute prohibiting stalking provides as follows:

**Stalking.--**(a)(1) A person commits the offense of stalking who intentionally and repeatedly follows or harasses another person in such a manner as would cause that person to be in reasonable fear of being assaulted, suffering bodily injury or death.
As used in this subsection:
  (A) "Follows" means maintaining a visual or physical proximity over a period of time to a specific person in such a manner as would cause a reasonable person to have a fear of an assault, bodily injury or death;
  (B) "Harasses" means a course of conduct directed at a specific person which would cause a reasonable person to fear an assault, bodily injury, or death, including, but not limited to, verbal threats, written threats, vandalism, or unconsented-to physical contact; and
  (C) "Repeatedly" means on two (2) or more separate occasions.

(b)(1) Stalking is a Class A misdemeanor.
(2) A second or subsequent violation of subsection (a) occurring within seven (7) years of the prior conviction is a Class E felony. A second or subsequent violation of subsection (a) involving the same victim and occurring within seven (7) years of the prior conviction is a Class C felony.

  (c) The provisions of this section shall not be construed to prohibit following another person during the course of a lawful business activity.

Tenn. Code Ann. § 39-17-315 (emphasis added).

While conceding that stalking may be established by "following or harassing," the defendant asserts that the indictment charged "repeatedly followed and harassed" and thus placed the burden on the state to prove that the defendant both followed and harassed the victim. The defendant also contends that the state proved neither following nor harassing. Because, he asserts, the victim did not know that she was being followed at the hospital, she could not have been in fear of an assault at that time.

6

The tapes of the telephone messages were played for the jury. They contained the threats made against the victim and the suggestion that she was being followed. Because she was familiar with certain phrases unique to the defendant and some of the subject matter was of a personal nature, the victim was able to express an opinion that the defendant was the caller. Later, a security worker found the defendant in the secured employee parking garage at the Baptist Hospital, where the victim worked, shortly after a receptionist received a call for the victim. The call was made on a hospital telephone. The receptionist recognized the male voice as one that had previously contacted the victim regularly. There was proof that the defendant was near the victim's residence on September 1 and proof, of course, that he was at the hospital on September 8. The nature of the telephone calls during that period warranted a fearful reaction by the victim. In our view, the proof, circumstantial and otherwise, is sufficient for the jury to have concluded that the victim had been both followed and harassed, within their statutory definitions, on a repeated basis.

II

Next, the defendant contends that the trial court should have charged the lesser offense of harassment:

> **Harassment.--**(a) A person commits an offense who intentionally:
> (1) Threatens, by telephone or in writing, to take action known to be unlawful against any person, and by this action knowingly annoys or alarms the recipient;
> (2) Places one (1) or more telephone calls anonymously, or at an inconvenient hour, or in an offensively repetitious manner, or without a legitimate purpose of communication, and by this action knowingly annoys or alarms the recipient; or
> (3) Communicates by telephone to another that a relative or other person has been injured, killed or is ill when such communication is known to be false.
> (b) A violation of this section is a Class A misdemeanor.

7

Tenn. Code Ann. § 39-17-308. While the state concedes that the trial court had announced that the crime of harassment would not be instructed to the jury, it takes the position that the failure to include all of the instructions in the record results in a waiver of the issue. Tenn. R. App. P. 13(c); Tenn. Ct. Crim. App. 10(b). The state had argued previously that harassment is not a lesser offense because of the differing elements.

The trial court made the following comment while denying a motion by the defendant for acquittal:

> I think you've got a whole lot better case with telephone harassment than you do with stalking. But you don't want that charged. And I--really in reviewing it, I suppose it's not, strictly speaking, a lesser included offense, although I think that's what you've proved....

The trial judge has a duty to give a complete charge of the law applicable to the facts of the case. State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986). It is settled law that when "there are any facts that are susceptible of inferring guilt of any lesser included offense or offenses, then there is a mandatory duty upon the trial judge to charge on such offense or offenses. Failure to do so denies a defendant his constitutional right of trial by a jury." State v. Wright, 618 S.W.2d 310, 315 (Tenn. Crim. App. 1981) (citations omitted); Tenn. Code Ann. § 40-18-110(a).

In State v. Trusty, 919 S.W.2d 305, 310 (Tenn. 1996), our supreme court set forth guidance on how to determine whether one offense is a lesser offense of another:

> Tennessee law recognizes two types of lesser offenses that may be included in the offense charged in the indictment: offenses necessarily included in the indictment and offenses that are lesser grades of the

8

> charged offense. An offense is necessarily included in the indictment ... only if the elements of the included offense are a subset of the elements of the charged offense and only if the greater offense cannot be committed without also committing the lesser offense.

Id. In that case, our supreme court also provided guidance on how to determine whether an offense is a lesser grade or class of the offense charged: "[o]ne need only look to the statutes to determine whether a given offense is a lesser grade or class of the crime charged." Id. at 310. The court observed that the legislature has divided criminal homicide "into the grades of first-degree murder, second-degree murder, voluntary manslaughter, criminally negligent homicide, and vehicular homicide." Id.

This court has previously held that harassment is not a lesser included offense of stalking. See State v. Gregory Jay Hoxie, No. 03C01-9506-CR-00183, slip op. at 12-13 (Tenn. Crim. App., at Knoxville, Nov. 7, 1996), aff'd, 963 S.W.2d 737 (Tenn. 1998). In Trusty, it was held that an offense is "necessarily included in the indictment ... only if the elements of the included offense are a subset of the elements of the charged offense and only if the greater offense cannot be committed without also committing the lesser offense." Trusty, 919 S.W.2d at 310 (emphasis added). Because one may commit stalking without committing harassment, harassment is not a lesser included offense of stalking.

Harassment requires (1) communication which threatens unlawful action against another, (2) repetitive or inconvenient phone calls, or (3) false communication that a relative or other person has been injured, killed or is ill. Tenn. Code Ann. § 39-17-308. Stalking requires intentionally and repeatedly following or harassing another in such a manner as would cause that person to be in reasonable fear of being assaulted, suffering bodily injury or death. Tenn. Code Ann. § 39-17-

9

315. While the stalking statute mentions the word "harass," the term has been defined differently in the stalking statute than in the harassment statute. For harassment to constitute stalking, it must be a "course of conduct directed at a specific person which would cause a reasonable person to fear an assault, bodily injury or death, including, but not limited to verbal threats, written threats, vandalism, or unconsented-to physical contact." Tenn. Code Ann. § 39-17-315(a)(1)(B).

One can commit stalking, as defined in Tenn. Code Ann. § 39-17-315, without committing harassment, as defined in Tenn. Code Ann. § 39-17-308. For example, one could commit stalking by vandalizing the victim's property. Such conduct would not also amount to harassment under Tenn. Code Ann. § 39-17-308. Because stalking can be committed without committing the offense of harassment, harassment is not a lesser included offense. Trusty, 919 S.W.2d at 309.

No determination was made in Hoxie as to whether harassment could be a lesser grade offense of stalking. We must conclude that it is not. See Trusty, 919 S.W.2d at 310. Both stalking and harassment are Class A misdemeanors. In consequence, neither is a lesser grade than the other. Enhancement to felony status only occurs where one has been previously convicted of stalking within seven years. While both offenses are codified in Title 39, Chapter 17, Part 3, it is doubtful that Trusty's "lesser grade" analysis would be applicable to this part of the Code. The offenses of obstructing highway or other passageway, disrupting meeting or procession, riot, disorderly conduct, civil rights intimidation, public intoxication, etc., are also codified in that chapter. See Tenn. Code Ann. 39-17-301 et seq. All of these offense are loosely characterized under Title 39 as "offenses against public health, safety, welfare" and under Part 3 as "disorderly conduct and riots." In our view, Trusty's "lesser grade" analysis does not readily apply to this chapter of the

10

Code.

In consequence, the trial court had no obligation to charge harassment. While the two offenses at issue are similar, they are separate and distinct crimes and one is neither included in nor lesser than the other.

III

Finally, the defendant contends that the original indictment had also charged the defendant with having been found guilty of stalking the victim within seven years of this offense. When that portion of the indictment referring to the prior conviction was stricken, the remainder of the indictment was accurately read to the jury. The defendant complains that the full document, including information about the prior conviction, was sent to the jury for consideration during its deliberations. See State v. Morgan, 541 S.W.2d 385 (Tenn. 1976).

Nothing in the record supports the claim that the jury was aware of the prior offense. No objection was made by the defendant before or during deliberations and none was made upon the return of the verdict. While the issue was raised on motion for new trial, the transcript of the hearing has not been included in the appellate record. It is the obligation of the appellant, of course, to provide this court with an adequate record in regard to any claim. The failure to do so results in a waiver of the issue as a possible ground for relief. Tenn. R. App. P. 13(c); Tenn. Ct. Crim. App. 10(b). Pleadings in the form of a motion for new trial do not qualify as proof.

11

Accordingly, the judgment is affirmed.

_____
Gary R. Wade, Judge

CONCUR:

_____
Thomas T. Woodall, Judge

_____
L.T. Lafferty, Special Judge