# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

## MARCH SESSION, 1998

| STATE OF TENNESSEE, | ) | C.C.A. NO. 02C01-9710-CR-00405 |
|---|---|---|
| Appellee, | ) | |
| | ) | |
| | ) | SHELBY COUNTY |
| VS. | ) | |
| | ) | HON. L.T. LAFFERTY |
| GEORGE ROSE, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Direct Appeal - Possession of |
| | ) | Controlled Substance) |

FOR THE APPELLANT:

TONY N. BRAYTON
Assistant Public Defender
201 Poplar, Suite 2-01
Memphis, TN 38103

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

DOUGLAS D. HIMES
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

WILLIAM L. GIBBONS
District Attorney General

CHARLES W. BELL
Assistant District Attorney
201 Poplar Avenue - Third Floor
Memphis, TN 38103

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

Appellant George S. Rose was convicted on April 16, 1997 by a jury in the Shelby County Criminal Court of possession of a controlled substance, to wit: cocaine, with intent to sell. As a Range I standard offender, Appellant was sentenced to 210 days incarceration in the Shelby County Correctional Center and five years probation. The trial court also imposed a $2,000.00 fine. Appellant presents the following issue for our consideration on this direct appeal: whether the trial court denied Appellant his constitutional right to trial by jury by refusing to instruct the jury on the lesser included offense of simple possession of a controlled substance or casual exchange.

After a review of the record, we affirm the judgment of the trial court.

## I. FACTUAL BACKGROUND

The proof shows that during the evening of July 20, 1995, the Organized Crime Unit of the Memphis Police Department conducted a "buy-bust" drug operation directed at apprehending street-level drug dealers. The focus of this particular operation was the Whitehaven area, specifically, Shelby Drive and Hodge in Memphis.

Officer Michael Hardy testified at trial that he posed as the decoy officer on July 20. Officer Hardy marked approximately $100.00 in "buy money" by writing his initials in the corner of the bills.

At approximately 8:15 P.M., Officer Hardy was parked at the corner of Shelby and Hodge. He testified that he motioned to a black female--later determined to be Edna Strickland--to his car. After Strickland approached the automobile, Officer Hardy informed her that he wanted to purchase a twenty-

dollar rock of cocaine. Ms. Strickland replied that she knew where to get it and stepped into the car. She directed Hardy to 4503 Neeley Road in Memphis. Hardy testified that he handed Strickland twenty dollars of marked buy money consisting of one ten-dollar bill and two five-dollar bills. At approximately 8:20 P.M., Strickland got out of the car and walked up to a window of the house. Ms. Strickland knocked on the window, and a black male answered her knock, appearing at the window. At trial, Officer Hardy identified Appellant as the same person who appeared inside the house at the window. According to Officer Hardy, Appellant wore a white T-shirt and dark pants on the evening of July 20. Officer Hardy recalled that Appellant opened the window and engaged in a short conversation with Ms. Strickland. After the conversation, Appellant walked away from the window for a short time. Upon returning, Appellant handed Strickland the cocaine, and she gave Appellant the twenty dollars. Ms. Strickland returned to the automobile. Officer Hardy testified that he never lost sight of Strickland's clasped hand containing the object given to her by Appellant. Once inside the vehicle, Strickland gave Hardy a white rock-like object. Officer Hardy drove down the road a short distance and gave the "take-down" signal. Support officers immediately arrived at the house and Hardy's car.

On cross-examination, Officer Hardy testified that the distance between his vehicle and the house was approximately fifty feet. Moreover, he stated that he had an unobstructed side view of the transaction and that ample daylight enabled him to see clearly. Hardy conceded that he could not see the item which Appellant placed into Ms. Strickland's hand but reiterated that he never lost sight of her hand after Appellant put the object into it. Officer Hardy stated that the buy money was recovered from Appellant and was later reused.

Detective Byron Hardaway testified that he was a "take-down" officer at the Neeley Road address on the evening of July 20, 1995. Hardaway explained that the take-down officer's responsibility is to locate and detain suspects after the decoy officer gives the take-down signal. After Officer Hardy gave the take-down signal, Hardaway and other officers approached the Neeley Road residence. Officer Hardy had described Appellant over the radio as a black male with a shoulder length jheri-curl and wearing a white T-shirt. Detective Hardaway knocked on the door, and Appellant's mother, Ruthie Rose, answered the door and let in Hardaway and the other officers. At this time, Appellant was walking down the hall behind his mother. The officers took Appellant outside, and Detective Hardaway recovered the buy money from Appellant's right front pocket. At this time, Appellant wore jogging pants.

Detective Hardaway testified on cross-examination that he and the other officers arrived at the house within one to two minutes following the take-down signal. He stated that it was still daylight when he and the other officers arrived but that it was getting dark. Detective Hardaway saw only Appellant, Appellant's mother, and a younger boy inside the home. Hardaway explained that he did not search Appellant's bedroom because it was so filthy. He returned the buy money to Officer Hardy. Detective Hardaway identified Appellant as the individual arrested at 4503 Neeley Road.

Officer Phillip Funderburk stated that he was a take-down officer on this particular occasion. Funderburk testified that several moments passed before anyone opened the door. Appellant's mother finally answered the door, and Appellant and a younger boy stood behind her. Appellant matched the description of the person who made the exchange with Ms. Strickland. He had a jheri-curl and wore a white T-shirt. Officer Funderburk testified that once

-4-

outside, Detective Hardaway performed a pat-down search of Appellant and recovered the buy money containing Officer Hardy's initials.

On cross-examination, Officer Funderburk testified that Ms. Ruthie Rose consented to a search of her son's bedroom. The search lasted for approximately five to ten minutes.

Officer Preston Morton testified that he was in charge of the holding and testing of evidence. Officer Hardy took the rock-like object to Officer Morton in the testing van. Officer Hardy watched as Morton performed a Ferguson field test on a portion of the suspected crack cocaine. The test revealed the substance to be cocaine. Subsequently, the substance was sent to the University of Tennessee Toxicology Laboratory for further analysis. Frieda Saharovici, a professional chemist, testified that analysis revealed the substance to be condensed cocaine in its free base form.

Ms. Ruthie Rose, Appellant's mother, testified that five individuals were inside the residence on July 20, 1995 when the police knocked on the door. These five people were herself; her husband, George Rose, Sr.; Appellant; her grandson, Spencer Miller (also known as "Darrell"); and Appellant's friend, Nathaniel Turner (also known as "Main"). According to Ms. Rose's testimony, Appellant answered the door, and the police entered the residence and searched Appellant's room without permission. One of the officers stated that he had found something and walked from the bedroom carrying a bag of lye soap. She denied that drugs were being sold from her residence. According to Ms. Rose, Appellant wore cut-off jogging pants with no pockets and wore no shirt. She further stated that officers recovered no money from Appellant. Ms. Rose further averred that people visiting Appellant typically knocked on his window. Finally, Ms. Rose

stated that she did not hear anyone knock at her son's window on the evening of July 20 but believed that she would have heard the knock had someone done so.

Cedric Brownlee, Appellant's cousin, testified that he visited the Neeley Road residence on July 20 but left before the police arrived. Mr. Brownlee was in Appellant's room when Ms. Strickland came to the window. Brownlee testified that Strickland and Appellant spoke briefly and that Strickland handed Appellant something which he threw back out of the window. Brownlee departed before the conversation between Appellant and Strickland ended. According to Brownlee's testimony, he never saw Appellant hand drugs to anyone and saw no drugs in Appellant's room. Appellant wore cut-off sweat pants and no shirt. As Mr. Brownlee walked from the house, he saw Ms. Strickland retrieve something from the ground.

Spencer Miller, Appellant's nephew and Ms. Ruthie Rose's grandson, testified that he was in the house when the police arrived. He also stated that Appellant, Appellant's mother and father, and Cedric Brownlee were also there at that time. Appellant answered the door. According to Miller, Appellant wore cut-off sweat pants with no pockets and wore no shirt. Miller averred that the police officers recovered no drugs or money from Appellant. Additionally, Miller admitted that prior to trial, he had discussed the incident with Appellant, Ms. Rose, and Mr. Brownlee.

Appellant stated that he was at home on July 20, 1995. He testified that his parents, Spencer Miller, Cedric Brownlee, and Nathaniel Turner were there as well. Mr. Brownlee was in Appellant's room when Edna Strickland came to the window. According to Appellant, Edna Strickland was intoxicated and flirted with him. Ms. Strickland allegedly told Appellant that she "had a trick in the car" and that she was "trying to buy some dope." Strickland asked Appellant where she

could get some drugs, and he told her that he did not know. Ms. Strickland threw some money in the window, but Appellant picked it up and threw it back to her. Appellant saw Strickland retrieve the money and put it into her pants. She walked away and got into a car. Appellant denied selling cocaine to and receiving money from Ms. Strickland. He testified that he spoke to Strickland for about four or five minutes and that he never left the window. The police arrived at the residence about one-half hour later and arrested him. He stated that he wore shorts with no pockets and was shirtless. According to Appellant, one officer searched him and said that he had recovered the twenty dollars. However, Appellant claimed that the police took nothing from him. Appellant testified that when he asked if he could see the money, one of the officers directed him to "shut up." The police searched Appellant's room without permission and discovered a bag of homemade lye soap and a mothball.

## II. JURY INSTRUCTIONS

Appellant's only complaint on this direct appeal is that he was denied his constitutional right to trial by jury because the trial court refused to instruct the jury on the lesser included offense of simple possession of a controlled substance or casual exchange. We disagree.

Both the Sixth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution guarantee an accused the right to trial by jury. Encompassed within the constitutional right to trial by jury is the accused's right to a correct and complete charge of the law applicable to the case. State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994); State v. Wright, 618 S.W.2d 310, 315 (Tenn. Crim. App. 1981). The trial court's failure to instruct the jury on any lesser included offenses denies a defendant his constitutional right

-7-

to trial by jury. <u>Wright</u>, 618 S.W.2d 310, 315 (citing <u>State v. Staggs</u>, 554 S.W.2d 620, 626 (Tenn. 1977)).

Tenn. Code Ann. § 40-18-110 provides in part:

> (a) It is the duty of all judges charging juries in cases of criminal prosecutions for any felony wherein two (2) or more grades or classes of offense may be included in the indictment, to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so.

Tenn. Code Ann. § 40-18-110(a).

Tennessee Rules of Criminal Procedure 31(c) permits a defendant to be convicted of "an offense necessarily included in the offense charged. . . ." TENN. R. CRIM. P. 31(c).

Tennessee case law is clear that a defendant is entitled to a jury instruction "on all lesser included offenses where `any facts. . . are susceptible of inferring guilt of any lesser included offense.'" <u>State v. Trusty</u>, 919 S.W.2d 305, 310 (Tenn. 1996) (quoting <u>State v. Wright</u>, 618 S.W.2d 310, 315 (Tenn. Crim. App. 1981)). In <u>Howard v. State</u>, the Tennessee Supreme Court articulated the appropriate test for determining whether a particular offense is a lesser offense necessarily included in the indictment. 578 S.W.2d 83, 85 (Tenn. 1979). "[A]n offense is necessarily included in another if the elements of the greater offense, as those elements are set forth in the indictment, include, but are not congruent with, all the elements of the lesser." <u>Id.</u> <u>See Trusty</u>, 919 S.W.2d 305, 311 (approving the definition of "lesser included offense" as set forth in the <u>Howard</u> decision).

Tenn. Code Ann. § 39-17-418 provides in pertinent part: "(a) It is an offense for a person to knowingly possess or casually exchange a controlled substance unless the substance was obtained directly from or pursuant to a valid prescription or order of a practitioner while acting in the course of professional

practice."  Tenn. Code Ann. § 39-17-418(a).  Tenn. Code Ann. § 39-17-419 provides:

> It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing.  It may be inferred from circumstances indicating a casual exchange among individuals of a small amount of a controlled substance or substances that the controlled substance or substances so exchanged were possessed not with the purpose of selling or otherwise dispensing in violation of the provisions of § 39-17-417(a).  Such inferences shall be transmitted to the jury by the trial judge's charge, and the jury will consider such inferences along with the nature of the substance possessed when affixing the penalty.

Tenn. Code Ann. § 39-17-419.

Appellant was convicted of possession of cocaine with intent to sell. Officer Michael Hardy purchased twenty dollars worth of cocaine as part of the Organized Crime Unit's "buy-bust" drug operation.  Under similar circumstances, this Court previously has refused to require that the jury be instructed as to simple possession of a controlled substance as a lesser included offense of possession with intent to sell.  See, e.g., State v. William Howard Horton, No. 01C01-9312-CR-00435, Davidson County (Tenn. Crim. App., Nashville, October 6, 1994), perm. to appeal denied, (Tenn. 1995); State v. J. Salts III, No. 01C01-9306-CC-00181, Sumner County (Tenn. Crim. App., Nashville, March 29, 1994). The trial court was not required to instruct the jury as to the inferences which are permitted by Tenn. Code Ann. § 39-17-419.

The judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

CONCUR:


 (See Below)
JOE B. JONES, PRESIDING JUDGE


_____
GARY R. WADE, JUDGE


The Honorable Joe B. Jones died May 1, 1998, and did not participate in this Opinion. We acknowledge his faithful service to this Court, both as a member of the Court and as its Presiding Judge.