# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## JACKSON

### AUGUST SESSION, 1996



**FILED**

**December 30, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

|  |  |  |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 02C01-9508-CC-00216** |
|  | ) |  |
| Appellee, | ) |  |
|  | ) |  |
|  | ) | **MADISON COUNTY** |
| **VS.** | ) |  |
|  | ) | **HON. JOHN FRANKLIN MURCHISON** |
| **EDWARD LEE MOONEY, SR.,** | ) | **JUDGE** |
|  | ) |  |
| Appellant. | ) | **(Direct Appeal - Attempted First** |
|  | ) | **Degree Murder and Possession of a** |
|  | ) | **Deadly Weapon with Intent to** |
|  | ) | **Employ it in the Commission of an** |
|  | ) | **Offense)** |

FOR THE APPELLANT:

PATRICK MARTIN
D. TYLER KELLY
213 E. Lafayette St.
Jackson, TN  38301

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

CHARLOTTE H. RAPPUHN
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243

JERRY WOODALL
District Attorney General

DON ALLEN
Assistant District Attorney
P. O. Box 2825
Jackson, TN  38301

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

On September 28, 1994, a Madison County jury convicted Appellant, Edward Lee Mooney, Sr., of two counts of attempted first degree murder and one count of possession of a deadly weapon with intent to employ it in the commission of an offense. On November 8, 1994, the trial court sentenced Appellant as a Range I standard offender to concurrent sentences of twenty-five, twenty-two, and two years. Appellant challenges both his convictions and his sentences, raising the following issues:

> 1) whether the evidence was sufficient to support his convictions for attempted first degree murder;
> 2) whether the trial court erred by not instructing the jury on the elements of aggravated assault, attempted voluntary manslaughter, and attempted criminally negligent homicide;
> 3) whether the trial court committed reversible error when it admitted evidence about Appellant's prior criminal record and other criminal behavior;
> 4) whether the trial court should have granted a mistrial when the prosecutor commented on defense counsel's closing argument; and
> 5) whether Appellant's sentences are excessive.

After a review of the record, we affirm the judgment of the trial court.

## I. FACTS

On November 20, 1993, at approximately 11:30 p.m., Melvin Eckford went to a club in Jackson, Tennessee for a night of socializing. Soon after he arrived, he met his friend, Darrel Womack. At one point when Eckford was alone, Appellant approached him and said, "Tell Darrel I've got something for him and I've got something for you." Appellant then went outside, and Eckford followed him. Eckford then saw Appellant reach under the driver's seat of his car and pull out a gun. When Eckford turned around and saw Womack coming out of the

club, Eckford yelled "Run. He's behind us. He's got a pistol." Eckford and Womack then ran in opposite directions. After Eckford and Womack ran away, Appellant waited by Womack's car for twenty to thirty minutes. When Appellant finally left, Eckford and Womack waited for another ten to fifteen minutes before they got into Womack's car and drove away.

As Womack and Eckford drove down the street on their way to Eckford's house, Appellant pulled his car out of a parking lot and began shooting at Womack and Eckford. Appellant followed Womack's car, shot out the back window, and attempted to pull alongside the car. Appellant fired approximately four to five shots at Womack's car, and one of these shots hit Eckford in the arm. There were also bullet holes in the roof, the driver's headrest, and the back door on the driver's side.

When Appellant was directly behind Womack's car, Womack slammed on the brakes and Appellant ran into him. Appellant then turned his car around and left. Womack and Eckford then went to Womack's house and Womack's girlfriend, Jeanetta Ann Brooks, took them to the hospital. Eckford remained in the hospital for four days for surgery and treatment of two nerves in his left arm that were paralyzed as a result of the gunshot injury.

Eckford testified that on the night he was admitted to the hospital, he told the police, "I knew who shot me, and I'll take care of it myself." Eckford explained that he made this statement when he "was all out of it." Eckford subsequently told the police that Appellant was the one who shot him.

Eckford testified that he had never had any problems with Appellant. Womack, however, testified that he had been in several confrontations with Appellant. The first incident occurred two to three years before the November 1993 shooting, when Appellant pulled a knife on Womack while they were both at Brooks' home. Later, Appellant went to Womack's residence, pulled a gun, fired several shots at Womack, and threatened to kill him. A few months before the November 1993 shooting, Appellant went to Womack's residence, pulled a gun on him, and threatened to kill him.

## II. SUFFICIENCY OR THE EVIDENCE

Appellant contends that the evidence was insufficient to support his convictions for attempted first degree murder. Specifically, Appellant claims that there was no evidence that he intended to kill Womack and Eckford, and even if there was evidence that he intended to kill them, there was no evidence that his intent to kill was deliberate or premeditated.

When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the

insufficiency of the convicting evidence. Id. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Harris, 839 S.W.2d at 75; Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." Id. at 779. Finally, Rule 13(e) of the Tennessee Rules of Appellate Procedure provides, "findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact beyond a reasonable doubt." See also Matthews, 805 S.W.2d at 780.

Under Tennessee law,

A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

> (1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the

conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a) (1997). At the time of the events in question here, Tennessee's first degree murder statute provided that "[f]irst degree murder is: [a]n intentional, premeditated and deliberate killing of another." Tenn. Code Ann. § 39-13-202 (1993).[1] The element of premeditation requires a previously formed design or intent to kill. State v. West, 844 S.W.2d 144, 147 (Tenn. 1992) (citation omitted). Deliberation requires that the offense be committed with cool purpose, free of the passions of the moment. Id. (citation omitted). In addition, the elements of premeditation and deliberation are questions for the jury which may be inferred from the manner and circumstances of the killing. State v. Bordis, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995). Facts showing the defendant's planning activity, motive, and nature of the killing can all provide evidence from which premeditation and deliberation can be inferred. See State v. Gentry, 881 S.W.2d 1, 4–5 (Tenn. Crim. App. 1993).

It is clear that, when viewed in the light most favorable to the State, the evidence was sufficient for a rational jury to convict Appellant of two counts of attempted first degree murder. First, any reasonable juror could conclude that Appellant intended to kill Eckford and Womack when he fired four or five gunshots into their moving vehicle. Second, the jury could have inferred from the evidence that Appellant had "a previously formed design or intent to kill." Indeed, Appellant had assaulted Womack with a weapon on three prior occasions and had threatened to kill Womack on two of those occasions. In regard to Eckford,

_____

[1] A 1995 amendment eliminated deliberation as an element of first degree murder. See Tenn. Code Ann. § 39-13-202(a)(1) (Supp. 1998) ("First degree murder is: [a] premeditated and intentional killing of another.").

the evidence showed that Appellant tried to entice both men into the parking lot where he would be waiting with his loaded gun by telling Eckford that "I've got something for him and I've got something for you." The jury could have concluded that Appellant's premeditation was shown by his attempt to entice the two men into the parking lot, his waiting for them by Womack's car, and his waiting for them down the street until they drove by. Third, the jury could have inferred that Appellant had acted with deliberation form the evidence that he quietly waited by Womack's vehicle for approximately thirty minutes before he finally left to wait for them down the street. The evidence of intent, premeditation and deliberation is abundant. This issue is without merit.

## III. JURY INSTRUCTIONS

Appellant contends that the trial court erred by not instructing the jury on the offenses of aggravated assault, attempted voluntary manslaughter, and attempted criminally negligent homicide. In general, a defendant has a "right to a jury instruction on all lesser included offenses where 'any facts . . . are susceptible of inferring guilt of any lesser included offense.'" State v. Trusty, 919 S.W.2d 305, 310 (Tenn. 1996) (quoting State v. Wright, 618 S.W.2d 310 (Tenn. Crim. App. 1981)).

The trial court clearly did not err when it declined to instruct the jury on aggravated assault because under Tennessee law, aggravated assault is not a lesser grade or class of attempted first degree murder. Id. at 311–12.

Further, the trial court did not err when it declined to instruct the jury on attempted voluntary manslaughter. Under Tennessee law, "[v]oluntary manslaughter is the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a) (1997). There is absolutely no evidence in the record that Appellant was provoked or that he was enraged at any time during the events in question here. "[W]here the record clearly shows that the defendant was guilty of the greater offense and is devoid of any evidence permitting an inference of guilt of the lesser offense, it is not error to fail to charge on a lesser offense." State v. Boyd, 797 S.W.2d 589, 593 (Tenn. 1990) (citation omitted).

Finally, the trial court did not err when it declined to instruct the jury on attempted criminally negligent homicide. This Court has previously held that the crime of attempted criminally negligent homicide does not exist under Tennessee law because one cannot intend to perform an unintentional act. State v. Dale Nolan, No. 01C01-9511-CC-00387, 1997 WL 351142, at *9 (Tenn. Crim. App., Nashville, June 26, 1997) (citing State v. Kimbrough, 924 S.W.2d 888 (Tenn. 1996)). Thus, this issue has no merit.

## IV. PRIOR BAD ACTS

Appellant contends that the trial court violated Rule 404(b) of the Tennessee Rules of Evidence when it admitted evidence of his misdemeanor record and prior criminal behavior. Rule 404(b) states that

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

> (1) The court upon request must hold a hearing outside the jury's presence;
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and
> (3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b).

The record indicates that after a hearing outside of the jury's presence, the trial court ruled that evidence of the prior threats and assaults by Appellant against Womack were admissible to prove both intent and motive.[2] Womack then testified that Appellant had pulled a knife on him on one occasion and had pulled a gun on him and threatened to kill him on another occasion. When the prosecutor asked Womack when this second incident had occurred, Womack stated, "You will have to go back and get the police report. I reported it." Womack then testified, without objection, that Appellant had pulled a gun and threatened to kill him on a third occasion and that he had also reported that incident to the police. Appellant claims that this evidence should have been excluded because its prejudicial effect outweighed its probative value. We

---

[2]The record does not indicate that the trial court made an express finding that there was clear and convincing evidence that Appellant had committed the prior crimes or made an express determination that the danger of prejudice did not outweigh the probative value of the evidence as required by State v. Parton, 694 S.W.2d 299, 303 (Tenn. 1985). However, the fact that the trial court ruled that it would allow evidence of the crimes themselves, but not evidence of the convictions for those crimes, indicates that the court had made these required determinations. When, as in this case, a trial court substantially complies with the procedural requirements of the rule, its determination will not be overturned absent an abuse of discretion. State v. Dubose, 953 S.W.2d 649, 652 (Tenn. 1997).

disagree. This evidence was clearly probative on the issues of intent and motive. Further, Womack only testified that he had reported two of these incidents to the police, he never testified that Appellant was either charged or convicted of these offenses. Whether to admit evidence is within the discretion of the court, and its decision will not be overturned absent an abuse of that discretion. State v. Bigbee, 885 S.W.2d 797, 807 (Tenn. 1994). Given the highly probative nature of this evidence and its limited potential for prejudice, the trial court did not abuse its discretion in finding that this evidence was admissible.

Appellant also argues that he was prejudiced when Womack stated in response to a question about where he was living during the events in question: "the morning Jeanetta Brooks got shot, Mr. Mooney did that too." Although Womack's comment was prejudicial to Appellant, the record indicates that his answer was unresponsive and was in no way elicited by the prosecutor. Moreover, the trial court immediately admonished Womack to confine himself to his trouble with Appellant. The court subsequently instructed the jury that they were to disregard this comment because there was no proof that Appellant had anything to do with that incident or that it had any relevance to this case. We presume that the jury followed this instruction. See State v. Little, 854 S.W.2d 643, 649 (Tenn. Crim. App. 1992). Thus, this issue is without merit.

## V. CLOSING ARGUMENTS

Appellant argues that the trial court erred when it failed to grant a mistrial when the prosecutor commented on defense counsel's closing argument. The record indicates that during closing argument, defense counsel suggested that

Womack and Eckford were shot at during a drug transaction that had somehow gone awry and that they had blamed the shooting on Appellant in order to cover up their own wrongdoing. During the State's closing argument, the prosecutor stated that there had been no evidence that drugs were involved in this case and that defense counsel was "trying to muddy the waters" by interjecting something that was not in the proof.

We agree with Appellant that the prosecutor's comment was improper. See State v. West, 767 S.W.2d 387, 395 (Tenn. 1989) (stating that it was improper for prosecutor to tell jury that defense counsel was "trying to throw sand in the eyes of the jury" and "blowing smoke in the face of the jury"). "Where argument is found to be improper the established test for determining whether there is reversible error is 'whether the improper conduct could have affected the verdict to the prejudice of the defendant.'" State v. Cauthern, 967 S.W.2d 726, 737 (Tenn. 1998) (quoting Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758, 759 (1965)). "We must consider: 1) the conduct complained of, viewed in light of the facts and circumstances of the case; 2) the curative measures undertaken by the court and the prosecution; 3) the intent of the prosecutor in making the improper statement; 4) the cumulative effect of the improper conduct and any other errors in the record; and 5) the relative strength or weakness of the case. Id. (citations omitted).

The application of the above test indicates that although the prosecutor's statement was improper, it was harmless because it did not affect the verdict to the prejudice of Appellant. First, the record indicates that the conduct complained of consisted of one brief, isolated statement. Second, the trial court

-11-

immediately instructed the jury that this statement was just "lawyer talk" and that the two attorneys were merely giving their interpretation of what the proof showed. The trial court also assured the jury that defense counsel had not done anything unethical during his closing argument. Third, there is no indication that the prosecutor was acting it bad faith. It appears that his intention was merely to refocus the jury on deciding the case based on the evidence actually presented at trial. Fourth, we cannot say that the cumulative effect of this error and any other errors justifies relief because we have not found any error with respect to Appellant's previous issues. Finally, the State's case was relatively strong. Both victims identified Appellant as the shooter. Thus, this issue has no merit.

## VI. SENTENCING

Appellant contends that the trial court imposed excessive sentences for the attempted murder convictions. "When reviewing sentencing issues . . . including the granting or denial of probation and the length of sentence, the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (1997). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider all the evidence, the presentence report, the sentencing principles, the enhancing and mitigating factors, arguments of counsel, the appellant's statements, the nature and character of the offense, and the appellant's potential

for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -210(b) (1997 & Supp. 1998); Ashby, 823 S.W.2d at 169. "The defendant has the burden of demonstrating that the sentence is improper." Id. Because the record in this case indicates that the trial court failed to properly consider the sentencing principles and all relevant facts and circumstances, our review is de novo without a presumption of correctness.

In making its sentencing determinations, the trial court found that no significant mitigating factors were applicable. Although the trial court found that Appellant's good behavior in jail was a mitigating factor, the court concluded that this factor was not significant because it was not one of the enumerated factors of Tennessee Code Annotated § 40-35-113. We agree that this factor was entitled to very little weight and that no evidence was presented to support a finding that any of the enumerated factors of were present.[3]

The trial court found that enhancement factor (1) applied to both convictions for attempted murder because Appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. See Tenn. Code Ann. § 40-35-114(1) (1997). Appellant concedes that the trial court correctly applied this factor, and we agree that it applied to both counts of attempted murder.

---

[3]Appellant contends that the trial court should have considered his good employment history as a mitigating factor. While the trial court could have considered this fact under Tennessee Code Annotated § 40-35-113(13), the trial court was not required to do so and, even if it had, this fact, when balanced against the violent nature of this offense, would have been entitled to little weight.

The trial court found that enhancement factor (3) applied because the offense involved more than one victim. See Tenn. Code Ann. § 40-35-114(3) (1997). We conclude that the court improperly applied this factor because each count of attempted murder involved only one victim and there were separate convictions for each offense. See State v. Clabo, 905 S.W.2d 197, 206 (Tenn. Crim. App. 1995) (holding that factor (3) was an "improper enhancement factor, since there were separate convictions for each victim").

The trial court found that enhancement factor (6) applied to the conviction for attempted murder of Eckford because Eckford sustained serious injuries. See Tenn. Code Ann. § 40-35-114(6) (1997). The trial court correctly applied this factor. Indeed, the record indicates that the bullet that entered Eckford's left arm paralyzed two of his nerves and that Eckford had to have surgery to repair the damage. Further, this Court has previously held that this factor can be applied to enhance a conviction for attempted first degree murder because particularly great injuries are not essential to the commission of the offense. State v. Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1996).

The trial court found that enhancement factor (9) applied to both convictions for attempted murder because Appellant employed a firearm in the commission of the offenses. See Tenn. Code Ann. § 40-35-114(9) (1997). Appellant contends that this factor was not applicable because he was also convicted of the firearms charge. However, this Court has previously stated that factor (9) can be applied regardless of whether a defendant has also been convicted of an offense involving a weapon. State v. Timothy N. Mosier, No. 2, 1991 WL 93019, at *1 (Tenn. Crim. App., Jackson, June 5, 1991).

-14-

The trial court found that enhancement factor (10) applied because Appellant had no hesitation in committing an offense when the risk to human life was high. See Tenn. Code Ann. § 40-35-114(10) (1997). However, the trial court clearly erred in applying this factor because a high risk to human life is inherent in the offense of attempted murder. State v. Griffis, 964 S.W.2d 577, 603 (Tenn. Crim. App. 1997).

The trial court also applied one nonstatutory enhancement factor—the place where the offense occurred.[4] Specifically, the trial court took judicial notice of the fact that the street where the shooting occurred, Royal Street, was the main thoroughfare in Jackson. The court stated that even though no evidence had been introduced about the matter, it was likely that other people and vehicles had been present on this busy street at the time of the shooting. The trial court's application of this nonstatutory enhancement factor was clearly erroneous. Regardless of whether the court erred when it took judicial notice of the nature of Royal Street, it is well settled that nonstatutory factors cannot be used to enhance a sentence. State v. Grissom, 956 S.W.2d 514, 518 (Tenn. Crim. App. 1997); State v. Strickland, 885 S.W.2d 85, 89 (Tenn. Crim. App. 1993).

Even though we hold that the trial court erred in applying some of the enhancement factors, a finding that enhancement factors were erroneously applied does not equate to a reduction in the sentence. State v. Keel, 882 S.W.2d 410, 423 (Tenn. Crim. App. 1994). Two enhancement factors were

---

[4]Appellant also contends that the trial court improperly based the enhancement of the sentences on its decision not to impose consecutive sentences. However, the record indicates that the trial court did not enhance Appellant's sentences on this basis. Rather, the trial court merely stated that, for some reason that is not clear, it believed that it could not apply enhancement factors (3) and (9) to consecutive sentences.

correctly applied to the conviction for the attempted murder of Womack and three factors were correctly applied to the conviction for the attempted murder of Eckford. Further, we agree that the mitigating factor in this case is entitled to little weight. Under these circumstances, we conclude that the record supports a sentence near the upper end of the range for both counts of attempted first degree murder.

Accordingly, the judgment of the trial court is AFFIRMED.


_____
JERRY L. SMITH, JUDGE


CONCUR:


_____
GARY R. WADE, PRESIDING JUDGE


_____
WILLIAM M. BARKER, SPECIAL JUDGE