IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1998 SESSION

FILED

March 22, 2000

Cecil Crowson, Jr.

Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. NO. 03C01-9704-CR-00144 |
| APPELLEE, | * | HAMILTON COUNTY |
| VS. | * | Hon. Stephen M. Bevil, Judge |
| HARVEY PHILLIP HESTER, | * | (Second Degree Murder–Two Counts; Attempted Second Degree Murder) |
| APPELLANT. | * | |

For Appellant:

Leonard M. Caputo
312 Vine Street
Chattanooga, TN  37403
(on appeal and at trial)

Leroy Phillips, Jr.
312 Vine Street
Chattanooga, TN  37403
(at trial)

For Appellee:

Paul G. Summers
Attorney General and Reporter

Michael J. Fahey II
Assistant Attorney General
425 Fifth Avenue, North
Second Floor, Cordell Hull Building
Nashville, TN  37243-0488

Bates Bryan
Assistant District Attorney General
600 Market Street
Courts Building
Chattanooga, TN  37402

OPINION FILED:_____

AFFIRMED

GARY R. WADE, PRESIDING JUDGE

<u>OPINION</u>

The defendant, Harvey Phillip Hester, was convicted of two counts of second degree murder and one count of attempted second degree murder. The trial court imposed twenty-five-year terms for each murder conviction and a twelve-year term for the attempted second degree murder conviction. Because the three sentences are to be served consecutively, the effective sentence is sixty-two years.

In the appeal of right to this court, the defendant challenged the sufficiency of the evidence, alleged prosecutorial misconduct, questioned the admission of certain evidence, alleged error by the failure to charge lesser included offenses, and challenged the propriety of the sentences. On June 4, 1998, this court filed an opinion, concluding that the trial court had committed error by failing to instruct the jury on the lesser offense of vehicular homicide. In consequence, the two second degree murder convictions were reversed and new trials ordered. The conviction for attempted second degree murder was affirmed. <u>State v. Harvey Phillip Hester</u>, No. 03C01-9704-CR-00144 (Tenn. Crim. App., at Knoxville, Jun. 4, 1998).

On August 5, 1998, the state applied for permission to appeal. On February 7, 2000, our supreme court remanded the case for reconsideration in light of its opinion in <u>State v. Dominy</u>, 6 S.W.3d 472 (Tenn. 1999), which was released over a year after the entry of our original opinion. Because <u>Dominy</u> involved the issue of lesser included offenses only, the remand does not affect the attempted second degree murder conviction in this case and does not alter the analyses in our original opinion as to other issues. So as to avoid confusion, sections I, III, IV, and V from our original opinion will be restated in their entirety. Only Section II, that portion dealing with the issue of lesser included offenses, has been changed.

2

On August 8, 1994, Richard Serna (Richard), his daughter, Angela, and his brother, Paul Serna (Paul), drove to the "blue hole" on Suck Creek Road at Signal Mountain to swim. Upon their arrival, the defendant was in the parking lot. Richard Serna briefly engaged in friendly conversation with the defendant after which the Sernas walked to the swimming area. Sometime later, the defendant approached them and asked if they had seen his wallet. The defendant searched unsuccessfully for his wallet and then left. Angela described this exchange as "pleasant."

About five minutes later, the defendant returned and again inquired about his wallet. He pointed out that the Sernas were the only others in the area and explained that his wallet contained around $2,200. The defendant left but soon returned and insisted his wallet had to "be here somewhere." When he mentioned that he had a gun in his car, the Sernas were surprised. Paul placed a knife in his pocket but made no threats to the defendant.

After the defendant left, the Sernas gathered their belongings and returned to their car. When they reached the parking lot, the defendant asked permission to search. While the Sernas allowed a search, the defendant did not find his wallet. The Sernas then drove away. After driving on a short distance, the Sernas noted the defendant was following them. He rammed the back of their car several times and, at one point, the Sernas' car "fishtailed" around a bigger truck.

At trial, Angela testified that the defendant struck their vehicle in the rear "over and over again ... continuously the whole way down the mountain." She estimated that their vehicle was struck more than twenty times. As their car passed by the Suck Creek Boat Ramp, Angela yelled out the window asking for someone to

3

call the police.

She recalled that at the bottom of the mountain, Suck Creek Road terminates at its intersection with Signal Mountain Boulevard, a four-lane road. She remembered that the defendant rammed their car into the four-lane road. At another intersection, only a short distance away, Richard and Paul Serna stopped their vehicle and confronted the defendant. Paul drew his knife from his pocket but held it to his side. Angela testified that an argument ensued about the wallet but that her next memory was waking up in the hospital. Initially unable to recognize her mother, Angela Serna had suffered a broken pelvic bone and a broken leg. All of her facial bones were broken. She required bone graft surgery on her nose.

James Pilkington, who observed the confrontation at the intersection of Mountain Creek Road and Signal Mountain Boulevard, testified that the Sernas appeared to be frightened. When Pilkington stopped at a nearby Conoco to call the police, he noticed the Sernas' vehicle drive by and thought the altercation might have ended. When he drove around a curve, however, he saw that the Sernas had been involved in a wreck.

Mark Payne, who also saw the confrontation between the Sernas and the defendant at the intersection of Signal Mountain Boulevard and Mountain Creek Road, testified that either Richard or Paul was standing on the side of the road with a terrified look on his face. He saw that individual run and then observed the driver of the Serna vehicle stop to allow him to enter. The defendant's vehicle "shot right through the light and started chasing [the Sernas] Nissan." Payne described the defendant as "chasing [the victims] down." Michael Eugene Hood, who also witnessed the confrontation at the intersection, corroborated Payne's version of the

4

events.

James DeSha, who was traveling on Signal Mountain Boulevard on the day of the wreck, testified that he saw a white Cutlass ram a red Nissan Pulsar on two occasions. He also saw the Cutlass move to the outside lane to the right side of the Nissan and "turned in on him," ramming into the back bumper of the Nissan, spinning it sideways. He recalled that the Sernas' Nissan slid sideways, became airborne, flew across a red Thunderbird, and onto the hood of a green Dodge. DeSha claimed that the defendant, who was driving the Cutlass, grinned as he drove away at a high rate of speed. DeSha was able to get the license plate number of the Cutlass.

Officer Charles Russell of the Chattanooga Police Department investigated the accident. He found three cars with "a considerable amount of damage." The victims' car contained several beer cans. At approximately 1:00 A.M. the day after the wreck, he located the Cutlass driven by the defendant. The license tags had been removed. While there were no dents to the front of the defendant's car, the front right fender did have a presence of red paint, the color of the Serna vehicle. The defendant, who had suffered a black eye, voluntarily turned himself in to police.

Dr. Charles Harlan performed an autopsy on Paul Serna. Death resulted from a ring fracture of C-1 and C-2 cervical vertebrae, which is the area where the skull fits on to the vertebral column. His blood alcohol content was .03 percent, which indicated he had consumed less than two units of alcohol.

Richard Serna, who had a blood alcohol content of .032 percent, was

5

a quadriplegic due to the brain injuries suffered in the accident. He died on January 20, 1995, several months after the car wreck. According to Dr. Frank King, the Hamilton County Medical Examiner, the cause of death was "acute bronchial pneumonia due to chronic medical debilitation due to head injury."

Attorney Joe McBrien, who represented the defendant in a civil case, appeared as a defense witness. He testified that the defendant had received a settlement award of $3518.75 six days before this incident. He recalled that the defendant received cash in that amount.

John Hackney, who lived at the foot of Suck Creek Mountain, was traveling to his residence on the day of the wreck, when he passed a car and then saw a billfold "blow up in the air." He stopped his vehicle and found the billfold and large denominations of cash lying on the ground. He testified that he picked everything up and left. The identification in the billfold was that of the defendant. Hackney admitted that he kept the money. He burned the wallet. He conceded that he had bragged to his co-workers about finding the cash, which is how the defense attorneys eventually located him. He acknowledged that he never notified the police about finding the wallet.

Terry Thurman, who testified through an interpreter, recalled that she saw the defendant and the victims in a confrontation at an intersection on Signal Mountain Boulevard. She observed one of the Serna men holding a knife up in the air.

David Blackburn testified that he was with the defendant at the time of the wreck. An individual named John and a girl whose name he could not recall

6

were also present. Blackburn recalled that the defendant had a large amount of money in his possession before they went to the swimming hole. Blackburn testified that he separated from the defendant and then saw him in the parking lot. His eye was swelling shut and his nose or mouth was "busted." The defendant claimed that the people pulling away in another car had just robbed him.

Blackburn testified that the defendant followed the Sernas down the mountain and bumped their car several times. When they reached Signal Mountain Boulevard, the defendant and John got out of their vehicle. He saw one of the Sernas approach waving a knife; when the Sernas returned to their vehicle, the defendant continued to follow them. Blackburn testified that he suggested that the defendant continue to follow so they could eventually call the police. Blackburn claimed that the driver of the Nissan kept swerving in and out in an attempt to keep the defendant from driving alongside. He testified that after the accident, the defendant drove him to his car. Blackburn was charged with "accessory after the fact" but the charges were dismissed. He acknowledged prior convictions for theft, robbery, and drug-related offenses.

I

The defendant first argues the evidence is insufficient to support the verdict. He argues the proof would at most establish vehicular homicide or vehicular assault.

On appeal, the state is entitled to the strongest legitimate view of the trial testimony and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof

are matters entrusted to the jury as trier of fact. <u>Byrge v. State</u>, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). The relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. <u>State v. Williams</u>, 657 S.W.2d 405, 410 (Tenn. 1983); Tenn. R. App. P. 13(e).

Second degree murder is defined as a "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). Our code defines "knowing" conduct as follows:

> "Knowing" refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to the result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

Tenn. Code Ann. § 39-11-302(b).

A person engages in criminal attempt when he acts with the degree of culpability otherwise required and "[a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." Tenn. Code Ann. § 39-12-101(a)(3).

In our view, there is sufficient evidence to support both of the second degree murder convictions as well as the attempted second degree murder conviction. Angela Serna testified the defendant rammed their vehicle more than twenty times. At one point, the defendant rammed the Serna vehicle, causing it to fishtail around an on-coming truck. DeSha testified that the defendant forced the

8

Serna vehicle to slide into the path of a Thunderbird, thereby causing the injuries to its occupants. There was evidence that the defendant then fled the scene traveling at a high rate of speed. Obviously, the jury accredited the testimony of the state witnesses.

Second degree murder does not require an intentional killing. All that is required is that the defendant "is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b). Here, the defendant was able to appreciate the dangers caused by his conduct. Even though the Sernas' vehicle had almost collided with a truck just before the fatal wreck, the defendant continued to ram the victims' vehicle from the rear and the side.

II

Next, the defendant argues that the trial court erred by failing to instruct on a lesser included offense, vehicular homicide. Tenn. Code Ann. § 39-13-213. The defendant argues that the trial judge had a duty under Tenn. Code Ann. § 40-18-110(a) to include in the instructions to the jury all lesser included offenses.

First degree murder, second degree murder, voluntary manslaughter, reckless homicide, and criminally negligent homicide were all charged to the jury. When the defendant requested an instruction on vehicular homicide, the trial court ruled as follows:

> [A]lthough I think the facts in this case could possibly support a charge to the jury on vehicular homicide, there is nothing, no language in the indictment which charges the offense of vehicular homicide, and it is a separate offense. This court is not going to charge vehicular homicide.

The state argues that any error by refusing to charge vehicular

9

homicide qualified as harmless error.

There is a statutory duty on the part of trial courts to charge not only the offense listed in the indictment,[1] but also all lesser included offenses. Tenn. Code Ann. § 40-18-110. It has traditionally been held that the failure to charge a lesser included offense denies a defendant his constitutional right to a trial by jury if there are any facts "susceptible of inferring guilt on any lesser included offense or offenses." State v. Wright, 618 S.W.2d 310, 315 (Tenn. Crim. App. 1981); see also McGowan v. State, 17 Tenn. 184 (1836). If, however, the record is devoid of evidence to support an inference of guilt as to the lesser offense, the trial court is not required to instruct the jury on the lesser offense. State v. Vann, 976 S.W.2d 93 (Tenn. 1998); State v. Stephenson, 878 S.W.2d 530 (Tenn. 1994). In State v. Bolden, our supreme court acknowledged that a "purpose of the statute is to protect the right to trial by jury by instructing the jury on the elements of all offenses embraced by the indictment [and to] facilitate . . . the overall truth-seeking function of the process." 979 S.W.2d 587, 593 (Tenn. 1998).

In Beck v. Alabama, 447 U.S. 625 (1980), the United States Supreme Court commented upon the basis of the duty to charge lesser included offenses:

> At common law, the jury was permitted to find the
> defendant guilty of any lesser offense necessarily
> included in the offense charged. This rule originally

---

[1]The indictments charged as follows:

That Harvey Phillip Hester alias Harvey Clevenger heretofore on August 8, 1994, in the County aforesaid, did unlawfully, intentionally, deliberately and with premeditation kill Paul Edward Serna, in violation of Tennessee Code Annotated 39-13-202, against the peace and dignity of the State.

That Harvey Phillip Hester alias Harvey Clevenger heretofore on August 8, 1994, in the County aforesaid, did unlawfully, intentionally, deliberately and with premeditation inflict mortal injuries on Richard Anthony Serna which resulted in the death of Richard Anthony Serna on January 20, 1995, in violation of Tennessee Code Annotated 39-13-202, against the peace and dignity of the State.

10

developed as an aid to the prosecution in cases in which the proof failed to establish some element of the crime charged. But it has long been recognized that it can also be beneficial to the defendant because it affords the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal. [P]roviding the jury with the "third option" of convicting on a lesser included offense ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard.

Id. at 633-34. In State v. Williams, 977 S.W.2d 101 (Tenn. 1998), a majority of our supreme court indicated that there was merely a statutory right, rather than a constitutional right, to a charge on lesser included offenses.[2] In State v. Langford, 994 S.W.2d 126 (Tenn. 1999), our supreme court again touched on the subject, holding that "a trial court must instruct the jury on all lesser included offenses if the evidence introduced at trial is legally sufficient to support a conviction for the lesser offense." Id. at 128.

Recently, in State v. Burns, 6 S.W.3d 453 (Tenn. 1999), our supreme

---

[2] See State v. Staggs, 554 S.W.2d 620 (Tenn. 1977) (a part of the constitutional right to trial by jury is to have every issue made by the evidence determined by the jury under a correct and complete charge of the law); Strader v. State, 362 S.W.2d 224 (Tenn. 1962). Recent cases stating the rule that failure to charge a lesser offense is a constitutional deprivation rely on State v. Wright, 618 S.W.2d 310 (Tenn. Crim. App. 1981) (Joe D. Duncan, Judge), and include the following: State v. Belser, 945 S.W.2d 776 (Tenn. Crim. App. 1996); State v. Howard, 926 S.W.2d 579 (Tenn. Crim. App. 1996); State v. Summerall, 926 S.W.2d 272 (Tenn. Crim. App. 1995); State v. Ruane, 912 S.W.2d 766 (Tenn. Crim. App. 1995); State v. Lewis, 919 S.W.2d 62 (Tenn. Crim. App. 1995); State v. Boyce, 920 S.W.2d 224 (Tenn. Crim. App. 1995); State v. King, 905 S.W.2d 207 (Tenn. Crim. App. 1995); State v. McKnight, 900 S.W.2d 36 (Tenn. Crim. App. 1994); State v. Vance, 888 S.W.2d 776 (Tenn. Crim. App. 1994); State v. Banes, 874 S.W.2d 73 (Tenn. Crim. App. 1993); State v. Richard Darrell Miller and Johnny Wayne Garner, C.C.A. No. 01C01-9703-CC-00087 (Tenn. Crim. App., at Nashville, Sept. 11, 1998); State v. George Rose, C.C.A. No. 02C01-9710-CR-00405 (Tenn. Crim. App., at Jackson, July 2, 1998); State v. Becky Davis, C.C.A. No. 03C01-9701-CR-00027 (Tenn. Crim. App., at Knoxville, May 1, 1998); State v. Willie D. Graham, C.C.A. No. 03C01-9707-CC-00314 (Tenn. Crim. App., at Knoxville, May 7, 1998); State v. Warren Tyrone Fowler, C.C.A. No. 03C01-9709-CC-00391 (Tenn. Crim. App., at Knoxville, Apr. 29, 1998); State v. Harvey D'Hati Moore, C.C.A. No. 03C01-9704-CR-00131 (Tenn. Crim. App., at Knoxville, Mar. 18, 1998); State v. Daniel Joe Brown, C.C.A. No. 02C01-9611-CC-00385 (Tenn. Crim. App., at Jackson, Dec. 3, 1997); State v. Michael Tyrone Gordon, C.C.A. No. 01C01-9605-CR-00213 (Tenn. Crim. App., at Nashville, Sept. 18, 1997); State v. George Brooks, C.C.A. No. 02C01-9602-CR-00050 (Tenn. Crim. App., at Jackson, May 15, 1997); State v. Janice Hansbrough-Eason, C.C.A. No. 02C01-9504-CR-00098 (Tenn. Crim. App., at Jackson, Dec. 19, 1996); State v. Hollis Ray Williams, C.C.A. No. 03C01-9406-CR-00209 (Tenn. Crim. App., at Knoxville, July 23, 1996); State v. Randall Scott, C.C.A. No. 01C01-9307-CR-00240 (Tenn. Crim. App., at Nashville, Jan. 5, 1996); State v. Deborah Gladish, C.C.A. No. 02C01-9404-CC-00070 (Tenn. Crim. App., at Jackson, Nov. 21, 1995); State v. Eric J. Fair, C.C.A. No. 02C01-9403-CR-00055 (Tenn. Crim. App., at Jackson, Nov. 15, 1995).

court revised the standards for the determination of lesser included offenses. Our high court confirmed that in a companion case, State v. Dominy, 6 S.W.3d 472 (Tenn. 1999), it had overruled portions of the holding in State v. Trusty, 919 S.W.2d 305 (Tenn. 1996), in which the court had established a distinction between lesser grades or classes of offenses and lesser included offenses. In Burns, the court adopted a modified version of the model penal code in order to determine what constitutes a lesser included offense:

> An offense is a lesser included offense if:
>
> (a)     all of its statutory elements are included within the statutory elements of the offense charged; or
>
> (b)     it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
>
> > (1)     a different mental state indicating a lesser kind of culpability; and/or
> >
> > (2)     a less serious harm or risk of harm to the same person, property or public interest; or
>
> (c)     it consists of
>
> > (1)     facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
> >
> > (2)     an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser included offense in part (a) or (b); or
> >
> > (3)     solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Burns, 6 S.W.3d at 466-67.

There is a two-step process in determining whether the evidence justifies a jury instruction on a lesser included offense:

12

>First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser included offense.  In making this determination, the trial court <u>must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence</u>.  Second, the trial court must determine if the evidence, viewed in this light, is <u>legally sufficient</u> to support a conviction for the lesser-included offense.

<u>Id.</u> at 469.

In <u>Dominy</u>, our supreme court set aside a conviction of spousal rape on the basis that it was not a lesser included offense of aggravated rape.  By utilizing the <u>Burns</u> test, the court concluded that a marriage between the defendant and the victim was an essential element to spousal rape, but not an element of aggravated rape.  Thus, section (a) of the <u>Burns</u> test did not apply.   Moreover, section (b) of the <u>Burns</u> test did not apply because the marriage element did not relate to "a different mental state" of the defendant or "a less serious harm or risk of harm" to the victim.  Finally, because section (c) dealt only with facilitation, attempt, and solicitation offenses, spousal rape obviously did not fit within any of the classifications.

In this case, the defendant was indicted for first degree murder.  Under our statutory scheme, the term "criminal homicide" means "the unlawful killing of another person which may be first degree murder, second degree murder, voluntary manslaughter, criminally negligent homicide, or vehicular homicide."  Tenn. Code Ann. § 39-13-201.  First degree murder is defined as follows:

>(a) (1) a premeditated and intentional killing of another;
>
>(2) a killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, arson, rape, robbery, burglary, theft,

13

> kidnapping, aggravated child abuse or aircraft piracy; or
>
> > (3) a killing of another committed as the result of the unlawful throwing, placing or discharging of a destructive device or bomb.
>
> (b) No culpable mental state is required for a conviction under subdivision (a) (2) or (a) (3) except the intent to commit the enumerated offenses or acts in such subdivisions.

By comparison, the statute prohibiting vehicular homicide provides, in pertinent part, as follows:

> (a) Vehicular homicide is the reckless killing of another by the operation of an automobile, airplane, motorboat or other motor vehicle:
>
> > (1) As the proximate result of conduct creating a substantial risk of death or serious bodily injury to a person; or
> >
> > (2) As the proximate result of the driver's intoxication as set forth in § 55-10-401. For the purposes of this section, "intoxication" includes alcohol intoxication as defined by § 55-10-408, drug intoxication, or both.

Tenn. Code Ann. § 39-13-213. Vehicular homicide, of course, requires the "operation of an automobile, airplane, motorboat, or other motor vehicle. . . ." That element is not necessary for the conviction of either first degree murder or second degree murder. In Dominy, our supreme court placed emphasis upon the defendant's constitutional right to be given notice of the offense or offenses charged. 6 S.W.3d at 476; see also State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997). It observed that Tenn. Code Ann. § 40-13-202 required indictments to "state the facts constituting the offense in ordinary and concise language . . . in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to

14

pronounce the proper judgment . . . ." Dominy, 6 S.W.3d at 476, n.6; see also Tenn. R. Crim. P. 31(c) ("The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense."). Our supreme court cited with approval Howard v. State, 578 S.W.2d 83, 85 (Tenn. 1979), and its holding that "an offense is necessarily included in another if the elements of the greater offense, as those elements are set forth in the indictment, include, but not are not congruent with, all the elements of the lesser." Dominy, 6 S.W.3d at 476. In other words, the offense is lesser included if "all its elements are contained within the elements of the offense charged in the indictment." Id.

Because vehicular homicide contains a statutory element not contained in first degree murder, that is, "the operation of an automobile, airplane, motorboat or other motor vehicle," vehicular homicide is not a lesser included offense. That additional element has nothing to do, of course, with the mental state of the defendant or the harm or risks to the victim. An indictment charging first degree murder would not be sufficient to support a conviction of vehicular homicide. Thus, the trial court here was not in error by refusing to charge to the jury the offense of vehicular homicide. The test established in Burns and utilized in Dominy requires a different result than the test adopted in State v. Trusty, 919 S.W.2d 305 (1996). Because Trusty has been overruled, there was no entitlement to a jury instruction on vehicular homicide.

III

Tennessee courts have long recognized the business records exception. Bolden v. State, 203 S.W. 755 (Tenn. 1918). In Bolden, our supreme

15

court explained the rationale for the "business records" exception: "They are receivable as original evidence, because they import trustworthiness, in that a motive to make the entries falsely is excluded." In Lillard, this court ruled the "business records exception as set forth in T.R.E. 803(6) is a firmly rooted exception to the hearsay rule." Slip op. at 5.

Had a proper foundation been laid, the results could have been admissible as business records without violating the defendant's right of confrontation. As long as the records are "properly admitted," there is no violation. Norton, 867 F.2d at 1363.

The failure on the part of the state to establish a proper foundation for the evidence would not require reversal. There was substantial evidence of the defendant's guilt. The blood alcohol content of the victims was not a significant point. There was no indication that that contributed to the car wreck. The error, in our view, qualified as harmless.

V

As his final issue, the defendant complains that twenty-five (25) year sentences, the maximum possible, for each second degree murder, and the sentence of twelve years, the maximum, for the attempted second degree murder, were excessive. He also complains that the trial court erred by ordering all three sentences to be served consecutively.

When a challenge is made to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a "de novo review ... with a presumption that the determinations made by the court from which the appeal is

16

taken are correct." Tenn. Code Ann. § 40-35-401(d).  The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment.  Tenn. Code Ann. §§ 40-35-102, -103, and -210.

At the time of this offense, the presumptive sentence was the minimum in the range if there were no enhancement and mitigating factors.  Tenn. Code Ann. § 40-35-210 (amended in 1995 changing the presumptive sentence for a Class A felony to the midpoint in the range).  Should the trial court find mitigating and enhancement factors, it must start at the minimum sentence in the range and enhance the sentence based upon any applicable enhancement factors, then reduce the sentence based upon any appropriate mitigating factors.  Tenn. Code Ann. § 40-35-210(e).  The weight given to each factor is within the trial court's discretion provided that the record supports its findings and it complies with the Sentencing Act.  See  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  The trial court, however, should make specific findings on the record which indicate its application of the sentencing principles.  Tenn. Code Ann. §§ 40-35-209 and -210.

At the sentencing hearing, Michael Scott Serna, the brother of Richard and Paul Serna, testified that anything less than the "maximum sentence ran

17

consecutive would be less than justice." He recalled that Richard weighed about one-hundred seventy pounds prior to the wreck and had dropped to eighty or ninety pounds as a result. He described his brother's pain as excruciating. He had to file bankruptcy because the medical bills amounted to "hundreds of thousands of dollars." He also asked the court to consider that Angela Serna would never be able to have children because of her injuries.

The presentence report established that the defendant, age twenty-four at the time of sentencing, completed eighth grade and acquired his G.E.D. A laborer, he has three children, ages four, three, and one. His prior criminal history included several thefts, simple assault, reckless driving, and failure to appear. He was on probation for theft at the time of these offenses.

The trial court found the following enhancement factors applicable to each offense:

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. Tenn. Code Ann. § 40-35-114(1).
>
> (2) The personal injuries inflicted upon the victim were great. Tenn. Code Ann. § 40-35-114(6).
>
> (3) The defendant possessed or employed a deadly weapon during the commission of the offense. Tenn. Code Ann. § 40-35-119(9).
>
> (4) The defendant had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-114(10).
>
> (5) The felony was committed while the defendant was on a form of release from a prior conviction. Tenn. Code Ann. § 40-35-114(13).

The defendant argues enhancement factor (10), no hesitation about

committing a crime when the risk to human life was high, is an essential element of the offenses. The trial judge commented that he was applying this factor because the defendant endangered the lives of persons other than the victims. For that reason, we agree that this factor is applicable.

The Tennessee Criminal Sentencing Reform Act of 1989 provides that an enhancement factor may be applied if it is not an "essential element" of the offense. Tenn. Code Ann. § 40-35-114. The test for determining if an enhancement factor is an essential element of an offense is whether the same proof necessary to establish the enhancement factor would also establish an element of the offense. See State v. Jones, 883 S.W.2d 597, 601 (Tenn. 1994).

In State v. Bingham, 910 S.W.2d 448 (Tenn. 1995), our supreme court ruled that factor (10) may be used "where the defendant creates a high risk to the life of a person other than the victim." In Bingham, our supreme court upheld use of the factor in a vehicular homicide case, where the trial court found the defendant had driven recklessly on a busy four-lane road. Because the defendant's conduct created a substantial risk of death to other drivers, the factor was appropriately applied.

In this case, the proof established that when the victims' vehicle wrecked, two other vehicles were involved and those drivers were placed directly in danger. Prior to the wreck, the defendant caused the victims' vehicle to "fishtail" around an oncoming truck. Clearly, others besides the victims were in danger due to the defendant's driving. This factor was appropriately applied.

The defendant also argues that enhancement factor (6), the personal

19

injuries suffered by the victim, is inapplicable because it is an essential element of the offenses charged. Because this factor was an essential element of the crime, it should not have been applied to the murder convictions. State v. Lambert, 741 S.W.2d 127, 134 (Tenn. Crim. App. 1987). It was, however, appropriately applied to the attempted second degree murder conviction. State v. Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995). "Particularly great injuries are not essential to the commission of this offense, but prove greater culpability." Id.

The defendant also contends that the trial court erred by refusing to apply the mitigating factor that "[s]ubstantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense." Tenn. Code Ann. § 40-35-113(3). At the sentencing hearing, the trial court made no findings on any mitigating circumstances. In our view, this mitigating factor is entitled to little or no weight. Even if the Sernas assaulted the defendant and stole his wallet, that would not excuse the defendant's extended criminal conduct in chasing the victims for several miles and repeatedly ramming their vehicle.

Even if some evidence of mitigation did exist, enhancement factors present so strongly outweigh the mitigating factors that the maximum sentence on each offense would have been warranted.

We now turn to the appropriateness of consecutive sentencing. Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court

20

established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution: "[C]onsecutive sentences should not routinely be imposed . . . and . . . the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved." Taylor, 739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-35-115. The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[3] exist:

> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

---

[3]The first four criteria are found in Gray. A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

21

(6) The defendant is sentenced for an offense committed while on probation;

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

In Gray, our supreme court ruled that before consecutive sentencing could be imposed upon the dangerous offender, as now defined by subsection (b)(4) in the statute, other conditions must be present: (a) that the crimes involved aggravating circumstances; (b) that consecutive sentences are a necessary means to protect the public from the defendant; and (c) that the term reasonably relates to the severity of the offenses.

In State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995), our high court reaffirmed those principles, holding that consecutive sentences cannot be required of the dangerous offender "unless the terms reasonably relate[] to the severity of the offenses committed and are necessary in order to protect the public (society) from further criminal acts by those persons who resort to aggravated criminal conduct." The Wilkerson decision, which modified somewhat the strict factual guidelines for consecutive sentencing adopted in State v. Woods, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991), described sentencing as a "human process that neither can nor should be reduced to a set of fixed and mechanical rules." Wilkerson, 905 S.W.2d at 938. The record must show that the sentencing principles and all relevant facts and circumstances were considered before the presumption of correctness applies.

The trial court found consecutive sentences were appropriate because the defendant was a dangerous offender. We agree. A reasonable inference from the proof is that the defendant purposefully followed the victims and rammed their

22

vehicle repeatedly, fully aware that the conduct endangered not only the victims but the occupants of the other vehicles on the road. Moreover, the defendant's prior criminal record indicates an escalating pattern of criminal behavior. The defendant was on probation at the time he committed the present offenses. See Tenn. Code Ann. § 40-35-115(b)(6). Consecutive sentences are necessary to protect society from further misdeeds by the defendant.

The judgment is affirmed.

_____
Gary R. Wade, Presiding Judge

CONCUR:


_____
William M. Barker, Special Judge


_____
James Curwood Witt, Jr., Judge