IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned On Briefs November 1, 2011

# CRISS WILLIAMS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-26538     Mark Ward, Judge**

**No.  W2010-02273-CCA-R3-PC  - Filed February 3, 2012**

After his conviction for second degree murder was upheld on appeal, Petitioner, Criss Williams, sought post-conviction relief on the basis of ineffective assistance of counsel, the trial court's alleged improper jury instructions, and the trial court's alleged misapplication of enhancement factors. *See State v. Criss Williams*, No. W1999-00823-CCA-R3-CD, 2001 WL 278111, at *1 (Tenn. Crim. App., at Jackson, Mar. 9, 2001), *perm. app. denied*, (Tenn. June 18, 2001).  The parties waived a hearing on the post-conviction petition and submitted the petition on the record.  The post-conviction court determined that Petitioner failed to prove that he received ineffective assistance of counsel and, therefore, denied post-conviction relief.  On appeal, we determine that the issue of whether the trial court should have charged lesser included offenses has been waived because it was not raised on direct appeal.  We further determine Petitioner has failed to prove that trial counsel's failure to object to the absence of instructions on lesser included offenses and appellate counsel's failure to raise the issue on appeal was prejudicial to his case or amounted to ineffective assistance of counsel.  Accordingly, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Joseph A. McClusky, Memphis, Tennessee, for the appellant, Criss Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Paul Goodman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

The factual basis for Petitioner's conviction for second degree murder were summarized by this Court on direct appeal as follows:

On February 16, 1997, Jerry Washington (the victim) attended Prentiss on the Hill nightclub in Memphis, Tennessee with his cousin, Donald Taylor, and Taylor's friend, Brandon Hawkins. The three drove Taylor's 1986 Explorer to the nightclub and arrived at approximately 11:00 p.m. Taylor testified that sometime before the club's normal closing hour, he walked out to his truck and waited for Washington and Hawkins. As Taylor waited, he saw Washington hurriedly walking toward the truck. Washington got in the vehicle and sat in the passenger seat. Taylor attempted to leave, but a car was blocking him from the rear. Shooting erupted, but Taylor testified that he did not hear the first shot, but he saw people getting down, which made him open his door and get down on the ground. Washington remained in the truck, but Taylor did not know what had happened to Washington until the shooting stopped. As Taylor stood up, he noticed that the right rear passenger window of his truck was busted and Washington was sitting up and looking out of the sun roof. Taylor testified that Washington was not saying anything, but he was breathing and his eyes were open. Taylor did not see any blood, until he moved Washington's jacket. Taylor did not see who fired the shots and did not know exactly how many shots were fired.

On cross-examination, Taylor testified that, on the night of the shooting, the club parking lot was not lit and approximately 500 to 800 people were at the club. Also, Taylor testified that he was aware that Washington's car had been shot-up about a month before this shooting, but Taylor was not aware of the details surrounding that incident.

Officer Mervin Jones testified that he was patrolling the area surrounding Prentiss on the Hill, at approximately 3:00 a.m., when he heard shots fired. Due to the number of people at the club, Officer Jones could not drive his patrol car up to the club, so he responded on foot. A club security guard told him that the perpetrator had run through the parking lot of the bank next door. Officer Jones attempted to pursue the suspect, but was unable to catch him. Then, the security guard informed Officer Jones that a passenger in a two-tone Eddie Bauer Ford Explorer had been shot. Officer Jones radioed the police dispatcher and asked for an ambulance.

Willie Farrow testified that he was at Prentiss on the Hill on the night of the shooting. Farrow stated that he was in the lobby of the club, when two men walked by him and Farrow heard one man say, "I'm fixing to kill this n----r." At that point, Farrow and his friend decided to leave the club. Approximately three to four minutes later, Farrow was walking out of the club when he saw a young man with a gun in his hand come from behind a Ford Explorer and shoot the passenger sitting in the Explorer. In court, Farrow identified the Defendant as the man who had made the previous statement. Farrow told the jury that, at the time of the shooting, the Defendant's hairstyle was a jheri curl and Defendant's hair was long. Farrow further stated that, on that night, the Defendant was with two other men, who had on top hats and dress clothes. Farrow also testified that the Defendant and the other man the Defendant spoke to, looked like brothers or cousins, but the other man was taller and darker than the Defendant.

Farrow further testified that he was no more than 15 to 20 feet away from the Defendant when the shooting started. He explained that the lighting in the parking lot of the club was decent, which permitted him to see that the Defendant had a long gun and that the Defendant shot into a Ford Explorer. Farrow testified that after the shooting, the Defendant got into a "burgundy-like" car with a light-skinned lady, but when the car could not leave the parking lot, the Defendant got out of the car and ran. Two days later, Farrow gave the police a statement and picked the Defendant's picture out of a photo line-up. Farrow identified the Defendant as, "B.M., . . . 33, brown complexion, . . . about six feet, 190/200 pounds. He's built. Jheri curled . . . [.]"

Frederick Hayes testified that, on the night of the shooting, he was working as a security guard in the parking lot at Prentiss on the Hill. Hayes stated that he saw the Defendant, Defendant's brother, another male and a female arrive at the club in a beige and maroon or burgundy Chrysler convertible. Later, the Defendant walked by Hayes with a brownish and wooden-like object hidden under a green and beige jacket. Based upon the top of the object, Hayes thought it was a baseball bat, but was not alarmed by Defendant's appearance, because Defendant's brother also worked security at the club. Hayes also testified that the distinguishing factor between the Defendant and his "twin-like" brother was the length of their hair, because the Defendant had longer and stringier hair.

Hayes further testified that, as the club was closing around 3:00 a.m., he saw the Defendant pull a gun from his coat and five or six seconds later, he heard two shots fired. After two shots were fired, Hayes saw the Defendant running through the parking lot with a long-barreled gun in his hand. Hayes pointed the responding officers in the direction in which he saw the Defendant fleeing. The next day, Hayes gave the police a statement and identified a photograph of the Defendant from a photo lineup. Hayes also admitted that he was nearsighted and could not remember if he was wearing his glasses, contact lenses, or neither, on the night of the shooting. Hayes also denied having any type of confrontation with the Defendant several years earlier at a different club.

Officer Robert G. Moore testified that he collected evidence and took photos of the crime scene involved in this case. He testified that the police recovered a loaded "SKS 7.62" assault rifle from behind the vacant service station located next to the club. They also recovered a spent bullet from the dashboard of the Explorer, a spent bullet from the ambulance and a bullet from Washington's body. The parties stipulated that the spent bullet recovered from the dashboard of the vehicle had been fired through the barrel of the Norinco 7.62 X 39 SKS rifle found at the crime scene. However, the bullet from the victim's body was too damaged to be of value for comparison. Officer Shan Allen Tracy testified that he brushed the Explorer and the rifle for fingerprints. Officer Tracy found no prints on the rifle, but found a print on the rifle's magazine. The parties stipulated that prints processed from the magazine of the rifle were of no value for comparison. Additionally, Dr. Wendy Gunther, a medical examiner and forensic pathologist, testified that the victim's body had two gunshot wounds-one in the back and one in the chest. The gunshot in the victim's back was the fatal wound.

The State then rested its case-in-chief.

Antonious Beaty testified for the defense. He stated that, on February 14, 1997 (the Friday before the shooting), he gave the Defendant a haircut, which left the Defendant bald. Beaty told the jury that it was his practice to only cut hair on Fridays. He also testified that the Defendant asked him to testify, and that Defendant had reminded him of the month and day that he cut the Defendant's hair. He further admitted that he was drinking on the day he cut the Defendant's hair. However, he stated that he "vividly" recalled cutting the Defendant's hair on that day.

-4-

Tarsha Echols testified that she and the Defendant were dating at the time of this incident. She testified that, on the night of February 15, 1997, the Defendant called her at approximately 11:30 p .m. Later, the Defendant called Echols at 3:19 a.m. from the Discovery Inn. Echols acknowledged that she did not speak with the Defendant when he called the second time, however her caller I.D. box displayed the time and place of the call. Echols told the jury that she assumed the last call was from the Defendant, because Defendant's earlier call had also come from the Discovery Inn. Echols further testified that the last time she saw the Defendant was Thursday, before the shooting, and the Defendant's hairstyle was a jheri curl with a V-shaped cut in the back.

Wayne Williams, the Defendant's younger brother, testified that he wears a little ponytail in the back of his head and has worn one for four years. He stated that, on the evening of the shooting, he rented a maroon and tan Chrysler convertible, which he drove to the club alone. He arrived at the club at 10:45 p.m. and saw Frederick Hayes, as he parked near the front of the club. About fifteen (15) minutes later, Wayne saw the Defendant (who was baldheaded from having his hair cut Friday) and the two talked briefly. Wayne did not see the Defendant again that evening. After the shooting, Wayne said he left the club alone and did not see his brother running on the club's parking lot. Also, Wayne testified he never saw the Defendant with an assault rifle. He further testified that neither he nor the Defendant were wearing top hats that night, and that he does not own a top hat. Wayne also testified that neither he nor the Defendant were wearing jackets that night.

The Defendant testified that, on Friday, February 14, 1997, Antonious Beaty shaved Defendant's head bald. On Saturday, Defendant got a room at the Discovery Inn. That night, Defendant drove to Prentiss on the Hill alone, in his 1985 Lincoln Continental and arrived between 10:00 and 10:15 p.m. Defendant parked in the Piggly Wiggly parking lot next to the club. While at the club, Defendant saw his brother Wayne and the two spoke briefly. Defendant stayed at the club for another 20 to 25 minutes and then left alone. He returned to his room at the Discovery Inn, called Tarsha Echols and then went to bed at approximately 11:35 p.m. During the night, Defendant was awakened by someone knocking on his window. He decided to call Echols at about 3:09 a.m., but she did not answer. On Sunday, Defendant checked out of the hotel and went to stay with a friend. On Monday, Defendant received a call from Wayne Williams, who stated that the police were looking for the Defendant. Defendant further testified that, on the night of the shooting, he was wearing brown corduroy pants, a sweater and a black flat leather hat.

Defendant also testified that he did not know the victim and that he did not shoot the victim. Also, Defendant asserted that several years earlier, he and Frederick Hayes had a confrontation at another club, which led to a fist fight.

*Id.* at *1-3. On appeal, Petitioner insisted that the evidence was insufficient to support the conviction and that the trial court erred in denying the motion for judgment of acquittal. *Id.* at *1. This Court affirmed Petitioner's conviction on appeal. *Id.*

Petitioner filed a timely petition for post-conviction relief. In the petition, Petitioner raised approximately ten different allegations of ineffective assistance of counsel. In addition, Petitioner claimed that the trial court improperly gave a "dynamite charge" to the jury, improperly charged the jury with the appropriate mens rea for second degree murder, failed to instruct the jury with any lesser included offenses, and erred in utilizing several enhancement factors.

The parties waived a post-conviction hearing, instead entering a "Stipulation." The parties agreed that "the facts set out in [the] pleadings would be the same facts Petitioner would testify to if called as a witness." The stipulation also stated that "the facts set out in the pleadings are accepted as evidence in this cause, just as if Petitioner testified."

The post-conviction court issued an order in which it denied post-conviction relief. The post-conviction court noted that since Petitioner's conviction, trial counsel had suffered a stroke and his ability to speak was somewhat impaired. Additionally, the post-conviction court noted that the pleadings contained "very little factual statements," instead they were full of "generalized claims without any factual specificity." The post-conviction court stated that it was unable to assess the credibility of the factual matters and veracity of the allegations. The post-conviction court concluded that it would rule on the legal issues raised "as a matter of law."

As a result, the post-conviction court concluded that all of Petitioner's complaints about the trial court, including the failure to charge lesser included offenses, the failure to charge the proper mens rea, the failure in applying enhancement factors, and the improper discussion with the jury were waived for failing to raise them on direct appeal. Next, the post-conviction court determined that Petitioner failed to carry the burden of proof on claims of ineffective assistance of counsel because no witnesses were called in a post-conviction hearing and Petitioner failed to establish prejudice as a result of trial counsel's actions. The post-conviction court denied relief. Petitioner filed a timely notice of appeal.

*Analysis*

On appeal, Petitioner challenges the denial of post-conviction relief. Specifically, he argues that the trial court failed to instruct the jury with any lesser included offenses and trial counsel was ineffective for failing to object to the jury instructions or raise the issue on appeal. The State, on the other hand, argues that there was no proof in the record to support any lesser included offense instructions and, therefore, it was impossible for trial counsel to be ineffective for failing to request lesser included offense instructions.

Petitioner did not raise the jury instruction issue on direct appeal. "There is a rebuttable presumption that a ground for relief not raised before a court of competent jurisdiction in which the ground could have been presented is waived." T.C.A. § 40-30-110(f). In determining whether an issue is waived in a post-conviction proceeding, the Tennessee Code provides,

> (g) A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:
>
> (1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or
>
> (2) The failure to present the ground was the result of state action in violation of the federal or state constitution.

T.C.A. § 40-30-106(g). Following our review, we conclude that the special circumstances provided in Tennessee Code Annotated section § 40-30-106(g)(1)-(2) do not apply in this case; therefore, the issue is waived. However, our conclusion on this issue does not preclude us from considering Petitioner's claim that counsel was ineffective for failing to object at trial or raise these issues on direct appeal.

*Post-Conviction Standard of Review*

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d

572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Shields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

*Ineffective Assistance of Counsel*

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

*Lesser Included Offenses*

On appeal, Petitioner complains that trial counsel was ineffective for not requesting lesser included offense instructions and, even if it was a strategic decision, the trial court was required to charge the offenses. Therefore, in Petitioner's mind, counsel was ineffective for failing to object when the trial court failed to properly charge the jury and ineffective for failing to raise the issue on appeal. The State responds that the Petitioner has failed to establish that trial counsel was ineffective because it was the trial court's duty to charge the jury as required by law regardless of any requests by trial counsel. The State also responds that Petitioner has failed to prove prejudice when the evidence against him did not support any lesser included offenses. The State further responds that the Petitioner has failed to establish that appellate counsel was ineffective because Petitioner has failed to prove that he would have succeeded on this issue had it been raised on direct appeal.

The post-conviction court determined that during trial, there was some discussion regarding jury instructions. The trial court specifically noticed that there was no evidence to support "passion" and was "not sure" if there was enough proof to substantiate a charge of voluntary manslaughter. There was no request made by trial counsel for the charge at that time. The post-conviction court noted that this put Petitioner in an "all or nothing" situation - in other words, the jury would convict him of second degree murder or nothing at all. The post-conviction court concluded that Petitioner presented no evidence at the post-conviction level that the failure of trial counsel to request the charge, raise it in a motion for new trial, or raise it on appeal was "anything other than trial strategy" or "below the range of competence demanded of criminal defense attorneys at the time." Further, the post-conviction court pointed out that Petitioner failed to provide testimony from trial counsel or appellate counsel to support his claim. Finally, the post-conviction court found that Petitioner failed to establish prejudice as a result of the jury instructions.

Our review of the record reveals that the trial court did not charge any lesser included offenses during the jury charge. Further, trial counsel did not object to the trial court's failure to charge any lesser included offenses and appellate counsel did not raise the issue on appeal. In order to prevail on this claim, Petitioner must prove that the trial court should have charged lesser included offenses and that trial counsel's failure to object and appellate counsel's failure to raise the issue on appeal was prejudicial to his case.

The accused in a criminal prosecution has a right to a correct and complete charge of the law applicable to the case. *State v. Phipps*, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994); *State v. Wright*, 618 S.W.2d 310, 315 (Tenn. Crim. App. 1981). The trial court's failure to instruct the jury on any lesser included offenses raised by the evidence denies a

defendant his constitutional right to trial by jury. *Wright*, 618 S.W.2d at 315 (citing *State v. Staggs*, 554 S.W.2d 620, 626 (Tenn. 1977)).

At the time of Petitioner's trial in 1999, Tennessee Code Annotated section 40-18-110 provided in part:

> (a) It is the duty of all judges charging juries in cases of criminal prosecutions for any felony wherein two (2) or more grades or classes of offense may be included in the indictment, to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so.

Tennessee case law is clear that a defendant is entitled to a jury instruction "on all lesser included offenses where 'any facts . . . are susceptible of inferring guilt of any lesser included offense.'" *State v. Trusty*, 919 S.W.2d 305, 310 (Tenn. 1996) (quoting *State v. Wright*, 618 S.W.2d 310, 315 (Tenn. Crim. App. 1981)), *overruled by State v. Burns*, 6 S.W.3d 453, 468-69 (Tenn. 1999).

At trial, Petitioner's only defense was that he did not shoot the victim. He relied on an alibi. "When there is no evidence to support a lesser included offense so that the accused can be guilty only of the greater offense or no offense at all, it is not error to refuse to instruct the lesser included offenses." *State v. Barker*, 642 S.W.2d 735, 738 (Tenn. Crim. App. 1982). Because the evidence supported either a finding that Petitioner was guilty of second degree murder or nothing at all, any instructions on lesser included offenses such as voluntary manslaughter, reckless homicide, or criminally negligent homicide were not warranted under the facts of this case.

Petitioner argues the case of *State v. Brown*, 311 S.W.3d 422 (Tenn. 2010), is beneficial to his position. We disagree. The facts of *Brown* are materially different from this case. In *Brown*, the supreme court concluded that there was sufficient evidence to convict the petitioner of the lesser included offense. 311 S.W.3d at 433-34. Here, as stated above, there was no evidence of any lesser included offense. Moreover, at least two other cases from this Court have examined cases similar to Petitioner's and reached the same conclusion. *See, e.g. Derrick Sutton v. State*, No. W2010-01413-CCA-R3-PC, 2011 WL 2899079, at *5-7 (Tenn. Crim. App., at Jackson, July 19, 2011) *perm. app. denied*, (Tenn. Dec. 13, 2011) ; *Tony Jamerson v. State*, No. W2007-01451-CCA-R3-PC, 2009 WL 1585812 at *4-6 (Tenn. Crim. App., at Jackson, June 8, 2009), *perm. app. denied*, (Tenn. Oct. 19, 2009). Accordingly, we conclude that the instruction was not warranted, that trial counsel was not deficient for failing to request the instruction, and that appellate counsel was not deficient

for failing to raise the omission of the instruction as an issue on appeal. Petitioner is not entitled to relief.

## Conclusion

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JERRY L. SMITH, JUDGE